**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JOHN DALY, PERRY A. BRUNO, and MELISSA FURMAN individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:25-cv-07185 |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| KRAFT HEINZ FOODS COMPANY, LLC | **JURY DEMANDED** |
| Defendant. | |

Now comes the Plaintiffs, John Daly, Perry A. Bruno, and Melissa Furman ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, and for their First Amended Class Action Complaint against the Defendant, Kraft Heinz Foods Company LLC ("Defendant"), Plaintiffs alleges and states as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for damages, and any other available legal or equitable remedies, for violations of Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., Nevada Deceptive Trade Practices Act NRS 598, et seq., False Advertising Law (Cal. Business & Professions Code §§ 17500 *et seq*., Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq,* Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*), common law fraud, and unjust enrichment resulting from the illegal actions of Defendant, in intentionally labeling its Products as containing no artificial preservatives, when they contain the artificial preservative lactic acid. Plaintiffs alleges as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

2.      Plaintiff John Daly is an individual who resides in Chicago, Illinois.

3.      Plaintiff Perry A. Bruno is an individual who resides in Henderson, Nevada.

4.      Plaintiff Melissa Furman is an individual who resides in Tehama County, California.

5.      Defendant is a Pennsylvania limited liability company, whose principal place of business is located in Chicago, Illinois.

6.      At all times relevant hereto, Defendant was engaged in the marketing and sale of cheesecake dessert products.

## JURISDICTION AND VENUE

7.      Defendant removed this case to the District Court of the Northern District of Illinois alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $5,000,000.00 in which members of the class are citizens of a State different from the Defendant.

8.      This court has personal jurisdiction over Defendant, because Defendant does business within the State of Illinois and County of Cook

9.      Venue is proper in this Court because Defendant does business *inter alia* in the county of Cook and a significant portion of the conduct giving rise to Plaintiffs' claims happened here.

## FACTS COMMON TO ALL COUNTS

10.     Defendant advertises, markets, sells, and distributes cheesecake dessert products throughout Illinois, California, Nevada, and the United States.

11.     During the Class Period Defendant sold all flavors of its Philadelphia Cheesecake Crumble products (the "Products") labeled, marketed, and advertised as containing "No Artificial Preservatives", but which contained artificial lactic acid.

12.     The United Stated Food and Drug Administration ("FDA") defines the term chemical preservative as: "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22.

13.     Defendant uses manufactured, artificial lactic acid in the Products.

14.     Manufactured lactic acid is produced through genetically engineered bacterial fermentation and acid base synthesis. Genetically engineered bacteria are fed a carbohydrate feedstock like glucose or sucrose and excrete lactic acid as a part of their biological metabolic process. Lactic acid is then collected and refined by removing dead bacteria cells through Rotary Drum Vacuum Filter.[1] Lactic acid is then purified and extracted by adding a calcium salt like calcium carbonate $CaCo_3$ (lime, chalk) to cause a spontaneous synthetic acid-base reaction between the calcium carbonate and the lactic acid.[2] The result of that synthetic reaction is the salt calcium lactate. To purify and successfully convert the calcium lactate to lactic acid an additional industrial chemical, sulfuric acid is added to produce lactic acid and calcium sulfate (gypsum) the gypsum is then collected, and the lactic acid can then be further purified with organic solvents.[3].

15.     Lactic acid is active against microorganisms in its undissociated form. The concentration of undissociated lactic acid in cheeses increases with the increase in total lactic acid

---

[1] G.K. Chotani et al., in *Handbook of Indus. Chem. & Biotech.*, 1495 (J.A. Kent et al. eds., Springer 2017).

[2] G.K. Chotani et al., in *Handbook of Indus. Chem. & Biotech.*, 1495 (J.A. Kent et al. eds., Springer 2017); A.O. Ojo & O. de Smidt, *Processes*, **11**, 688 (2023).

[3] *Id.*

content and is negatively correlated with pH. The main factors affecting microbial behavior in cheeses include pH, $a_w$, undissociated lactic acid concentration, and temperature.[4]

16.     Lactic acid when added to food tends to prevent or retard deterioration thereof, but is not common salt, sugar, vinegar, a spice, an oil extracted from spices, a substance added to food by direct exposure thereof to wood smoke, or a chemical applied for its insecticidal or herbicidal properties.

17.     Based on the forgoing allegations, lactic acid is a chemical that retards the deterioration of food products. Therefore, it is a chemical preservative. Moreover, lactic acid is specifically an antimicrobial agent in cheeses, such as in Defendant's Products which are cheesecake desserts.

18.     On May 6, 2025, Plaintiff John Daly purchased a Product two pack from Amazon.com from his home in Chicago, Illinois.

19.     On or about March 30, 2025, Plaintiff Perry A. Bruno purchased a two pack of Products from Amazon.com from his home in Henderson, Nevada.

20.     Perry A. Bruno is an elderly person who is older than sixty years of age.

21.     On or about February 11, 2025, Plaintiff one of the Products at a Walmart located in Tehama County, California.

22.     Plaintiff, and reasonable consumers, understand that products labeled as containing No Artificial Preservatives will not contain any artificial preservatives.

---

[4] Rosshaug P.S., Detmer A., Ingmer H., Larsen M.H. Modeling the growth of Listeria monocytogenes in soft blue-white cheese. Appl. Environ. Microbiol. 2012;78:8508–8514. doi: 10.1128/AEM.01865-12; Sanaa M., Coroller L., Cerf O. Risk Assessment of Listeriosis Linked to the Consumption of Two Soft Cheeses Made from Raw Milk: Camembert of Normandy and Brie of Meaux. Risk Anal. 2004;24:389–399. doi: 10.1111/j.0272-4332.2004.00440.x.

23.     The "No Artificial Preservatives" statement on the labels of the Products is material to reasonable consumers. "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[5]

24.     The following are pictures of the challenged labeling appearing on the side of the Products:



---

[5] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, Mintel (Sept. 3, 2015), *available at* https://www.mintel.com/press-centre/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/





25. Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the contents of the Products.

26. Plaintiffs, like reasonable consumers, do not understand food chemistry well enough to know if ingredients tend to prevent or retard deterioration of food by merely reviewing a product label.

27. By making false and misleading claims about the contents of its Products, Defendant impaired Plaintiffs' ability to choose the type and quality of products they chose to buy.

28. Therefore, Plaintiffs have been deprived of their legally protected interest to obtain true and accurate information about consumer products as required by law.

6

29.     As a result of Defendant's fraudulent labeling, Plaintiffs and the Class Members have been misled into purchasing Products that did not provide them with the benefit of the bargain they paid money for, namely that the Products would not contain preservatives.

30.     As a result of Defendant's fraudulent labeling, Plaintiff and the Class paid a price premium for premium Products, but instead received non-premium Products.

31.     Plaintiffs and the Class Members purchased Defendant's Products because Defendant's advertising claimed that the Products did not contain artificial preservatives.

32.     Plaintiffs and the Class Members have been deprived of the benefit of their bargain, namely, that they would receive Products that do not contain artificial preservatives.

33.     Alternate, similar, products are sold without "no artificial preservatives" labeling without a price premium. For example, a similar cheesecake crumble dessert product is sold for approximately $0.27 per ounce compared to Defendant's Products which are sold for approximately $0.64 per ounce.[6]

34.     Producers of consumer products, like Defendant, use consumer product labeling to increase consumer demand for products based on the perceived features or benefits of the products thereby increasing the price producers can charge for their products and/or the quantity they can sell.

35.     Defendant by including "no artificial preservatives" labeling increased consumer demand for the Products by incentivizing consumers to purchase them to receive desirable product features.

---

[6] bettergoods Cheesecake Fudge Caramel Crumble Gelato, 16 fl oz (Frozen), Walmart, https://www.walmart.com/ip/5321127804 (last visited May 20, 2025); Philadelphia Cherry Cheesecake Crumbles, 2 ct Pack, 3.25 oz Cups, Walmart, https://www.walmart.com/ip/140192217 (last visited May 20, 2025).

36. However, as described above, the "no artificial preservatives" label on Defendant's Products is misleading, and consumers have been therefore deprived of that product feature. As a result, Defendant has been able to sell the Products at a greater price and/or in greater quantity than if Defendant did not include the challenged labeling, but without providing consumers with the promised product feature. Stated otherwise, Defendant coerced consumers to base their purchasing decision in material part on false claims, thereby fraudulently, deceptively, and unfairly increasing consumer demand for the product. Defendant profited from these acts by extracting additional funds from consumers than otherwise would not have been paid for Class Products, and also harmed competitors by luring would-be consumers of competitive products away from law-abiding products that were not so falsely advertised

37. Plaintiffs did not understand that the Products they purchased contained an artificial preservative at the time of their purchase because they do not have an advanced understanding of chemistry.

38. Furthermore, due to Defendant's intentional, deceitful practice of falsely labeling the Products as containing "no artificial preservatives", Plaintiffs could not have known that the Products contained an artificial preservative.

39. Plaintiffs were unaware that the Products contained an artificial preservative when they purchased them.

40. Worse than the lost money, Plaintiff, the Class, and Sub-Class were deprived of their protected interest to choose the type and quality of products they ingest.

41. Defendant, and not Plaintiff, the Class, or Sub-Class, knew or should have known that labeling, marketing, and selling the Products as containing "no artificial preservatives" was false, deceptive, and misleading, and that Plaintiff, the Class, and Sub-Class members would not

8

be able to tell the Products they purchased contained an artificial preservative unless Defendant expressly told them.

42. On information and belief, Defendant did know that Products contained an artificial preservative but chose to label the Products with "no artificial preservative" labeling because it did not believe its customers were well educated enough to know the difference.

43. On information and belief, Defendant employs professional chemists to create the chemical formulas of the Products, therefore, Defendant through its employees knew or should have known that lactic acid retards the deterioration of food products and is therefore a chemical preservative.

44. On information and belief, Defendant has been in possession of manufacturing specifications for the lactic acid ingredients it added to its products, and therefore knew that the lactic acid it added to the Products was produced synthetically.

45. As a result of Defendant's acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

   a. Lost money as a result in a shift of the consumer demand curve which increases consumer demand, the number of units sold, and the price of the Products;

   b. Wasting Plaintiff's time; and

   c. Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

### CLASS ALLEGATIONS

46. Plaintiff brings this action on behalf of themselves and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

9

> All persons within the United States who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification.

47.     Plaintiff John Daly also brings this action on behalf of himself and all others similarly situated, as a member of the proposed sub-class (the "Illinois Sub-Class"), defined as follows

> All persons within the State of Illinois who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification.

48.     Plaintiff Perry A. Bruno brings this action on behalf of himself and all others similarly situated, as a member of the proposed sub-class (the "Nevada Sub-Class") defined as follows:

> All persons within the State of Nevada who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification

49.     Plaintiff Perry A. Bruno  also brings this action on behalf of himself and all others similarly situated, as a member of the proposed Nevada elderly sub-class (the "Nevada Elderly Sub-Class"), defined as follows:

> All elderly persons within the State of Nevada who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification.

50.     Plaintiff Melissa Furman brings this action on behalf of himself and all others similarly situated, as a member of the proposed sub-class (the "California Sub-Class") defined as follows:

> All persons within the State of California who purchased the Products within four years prior to the filing of the original Complaint through the date of class certification.

10

51.     The Class and the Sub-Class satisfy all of the requirements of the Illinois Code of Civil Procedure for maintaining a class action, specifically:

a.     Upon information and belief, the Class and the Sub-Class are so numerous that joinder of all members is impracticable. On information and belief there are hundreds, if not thousands of individuals in the United States and the State of Illinois who purchased the products within the applicable statute of limitations period.

b.     There are questions of fact and/or law which are common to the Class and the Sub-Class, and which predominate over questions affecting any individual Class or Sub-Class members. These common questions of fact and law include, but are not limited to:

i.     Whether Defendant disseminated false and misleading information by claiming the Products contained "no artificial preservatives";

ii.     Whether the Class and Sub-Class members were informed that the Products contained an artificial preservative;

iii.     Whether the Products contained an artificial preservative;

iv.     Whether Defendant's conduct was unfair and deceptive;

v.     Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

vii.     Whether there should be a tolling of the statute of limitations; and

viii.     Whether the Class and Sub-Class members are entitled to restitution, actual damages, punitive damages, and attorneys' fees and costs.

11

c. Plaintiff's claims are typical of the Class and the Sub-Class, which all arise from the same operative set of facts and are based on the same legal theories

d. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and the Sub-Classes.

e. Plaintiff will fairly and adequately protect the interests of the Class and the Sub-Classes and Plaintiffs have retained experienced and competent attorneys to represent the Class and the Sub-Classes.

f. This class action is a fair and efficient adjudication of the controversy alleged herein. Plaintiffs anticipate that no unusual difficulties are likely to be encountered in the management of this class action.

g. This class action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. This class action will also permit the adjudication of relatively small claims by many Class and Sub-Classes members who would not otherwise be able to afford to seek legal redress for the wrongs complained of herein. Absent a class action, Class and Sub-Class members will continue to suffer losses of legally protected rights, as well as monetary damages. If Defendants' conduct is allowed proceed to without remedy, Defendants will continue to benefit financially from such conduct.

h. Defendants have acted on grounds generally applicable to the entire Class and Sub-Classes, thereby making it appropriate for the Court to order final monetary relief with respect to the Class and the Sub-Classes as a whole.

52. Defendant, its employees and agents are excluded from the Class and Sub-Classes. Plaintiff does not know the number of members in the Class and Sub-Classes, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

53. The size and definition of the Class and Sub-Classes can be identified by Defendant's own records and through the records of retailers.

**COUNT I**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.***
**(On behalf of the Class and Illinois Sub-class)**

54. Plaintiff incorporates all of the allegations and statements made in Paragraphs 1 through 53 above as if fully reiterated herein.

55. Plaintiff John Daly is a "person" as defined in 815 ILCS 505/1(c), as he is a natural person.

56. Defendant is a "person" as defined in 815 ILCS 505/1(c), as it is a company and a business entity and/or association.

57. 815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

58. Through its representation that the Products contained no artificial preservatives, Defendant made false promises, misrepresentations, concealments, suppressions, and omissions

13

of material facts, with the intent that Plaintiff John Daly rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts.

59.     815 ILCS 505/10a states:

(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...

(c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

60.     In taking the actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions, and omissions of material facts set forth above, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2.

61.     Defendant failed to comply with the requirements of the ILCFA, including, but not limited to, 815 ILCS 505/2 as to the Class and Sub-Class members with respect to the above-alleged transactions

62.     By reason thereof, Plaintiff is entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 ILCS 505/2, and awarding actual damages, punitive damages, costs, and attorneys' fees.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a.     An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

14

b.      An order certifying the undersigned counsel as the Class and Illinois Sub-Class Counsel;

c.      An order requiring Defendant, at its own cost, to notify all members of the Class and the Illinois Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.      Judgment against Defendant in an amount to be determined at trial;

e.      Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

f.      Any other relief deemed just and proper by this Court.

## COUNT II
## COMMON LAW FRAUD
### (On behalf of the Class and all Sub-classes)

63.     Plaintiff incorporates all of the allegations and statements made in Paragraphs 1 through 53 above as if fully reiterated herein.

64.     Through its false statements that the Products contain "No Artificial Preservatives" Defendant made false statements of material fact.

65.     At the time Defendant made its statements to Plaintiffs that the Products did not contain artificial preservatives, it knew, or reasonably should have known, that the statements described above were false.

66.     At the time Defendant made the statements to Plaintiffs, Defendant intended to induce Plaintiff to purchase the Products.

67.     Plaintiff relied upon the truth of the statements described above and purchased the Products, only to find that the Product he purchased contained synthetic preservatives.

68.     As a result of their reasonable reliance upon Defendant's false statements of

15

material fact as set forth above, Plaintiff and other members of the Class and Sub-Class have suffered concrete and particularized injuries, harm, and damages which include, but are not limited to, the loss of money spent on products they did not want to buy, and stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, and similar categories of damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a. An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

b. An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c. An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d. Judgment against Defendant in an amount to be determined at trial;

e. Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

f. Any other relief deemed just and proper by this Court.

## COUNT III
## UNJUST ENRICHMENT
### (On behalf of the Class and all Sub-Classes)

69.     Plaintiff incorporates all of the allegations and statements made in Paragraphs 1 through 53 above as if fully reiterated herein.

70.     Plaintiff conferred monetary benefits to Defendant by purchasing the Products.

71.     Defendant has been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the Products based on the false statements that the Products contained "no

16

artificial preservatives".

72.     Defendant's retention of the revenue it received from Plaintiff, and the Class and Sub-Class members, is unjust and inequitable because Defendant's false statements caused injuries to Plaintiff, and the Class and Sub-Class members, as they would not have purchased the Products, or would not have paid a premium price, if they knew the Products contained a preservative.

73.     Defendant's unjust retention of the benefits conferred on it by Plaintiff, and the Class and Sub-Class members, entitles Plaintiff, and the Class and Sub-Class members, to restitution of the money they paid to Defendant for the Products.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a.  An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

b.  An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c.  An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.  Judgment against Defendant in an amount to be determined at trial;

e.  Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

f.  Any other relief deemed just and proper by this Court.

## COUNT IV
## VIOLATIONS OF THE NEVADA DECEPTIVE TRADE
## PRACTICES ACT, NRS 598, *et seq*
### (On behalf of the Class and the Nevada Sub-class and Nevada Elderly Sub-Class)

17

74. Plaintiff incorporates all of the allegations and statements made in Paragraphs 1 through 53 above as if fully reiterated herein.

75. Nev. Rev. Stat. § 598.0915 states:

> A person engages in a "deceptive trade practice" if, in the course of his or her business or occupation, he or she:
> 5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith.
> 7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model.
> 9. Advertises goods or services with intent not to sell or lease them as advertised.

76. Through its representation that the Products contained "no artificial preservatives", Defendant made false representations as to the characteristics of the Products.

77. Through its representation that the Products did not contain artificial preservatives, Defendant made false representations that the Products were of a particular standard.

78. Through its representation that the Products did not contain artificial preservatives, Defendant advertised the Products with intent not to sell them as advertised.

79. Nev. Rev. Stat. § 41.600 states:

> 1. An action may be brought by any person who is a victim of consumer fraud.
> 2. As used in this section, "consumer fraud" means:
> (e) A deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive;
> 3. If the claimant is the prevailing party, the court shall award the claimant:
> (a) Any damages that the claimant has sustained;
> (b) Any equitable relief that the court deems appropriate; and
> (c) The claimant's costs in the action and reasonable attorney's fees.

18

80.     In taking the actions and omissions set forth above, and making the false representations of material facts set forth above, Defendant violated the Nev. Rev. Stat. § 598.0915. As a result, Plaintiff, and the class and subclass members are victims of consumer fraud as defined by Nev. Rev Stat. § 41.600.

81.     By reason thereof, Plaintiff, the class, and sub-class, are entitled to a judgment against Defendant, declaring that Defendant's conduct violated Nev. Rev. Stat. § 598.0915, and awarding actual damages, punitive damages, costs, and attorneys' fees.

82.     Additionally, Plaintiff Bruno is an "elderly person" as defined by Nev. Rev. Stat. § 598.0933, because he is a person who is older than 60 years of age.

83.     In taking the actions and omissions set forth above, and making the false representations of material facts set forth above, Defendant violated the Nev. Rev. Stat. § 598.0915. By reason thereof, Plaintiff and the subclass members are entitled to a judgement against Defendant, actual damages, punitive damages, and reasonable attorney fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

    a.  An order certifying the Class and the Nevada Sub-Class and appointing Plaintiff as Representative of the Class and the Nevada Sub-Class;

    b.  An order certifying the undersigned counsel as the Class and Nevada Sub-Class Counsel;

    c.  An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

    d.  Judgment against Defendant in an amount to be determined at trial;

e. Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

f. Any other relief deemed just and proper by this Court.

## COUNT V
## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING ACT
### (Cal. Bus. & Prof. Code §§ 17500 *et seq.*)
### (On behalf of the Class and the California Sub-Class)

84. Plaintiff incorporates by reference each allegation set forth above in paragraphs 1 through 53.

85. Pursuant to California Business and Professions Code section 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

86. California Business and Professions Code section 17500, *et seq.*'s prohibition against false advertising extends to the use of false or misleading written statements.

87. Defendant misled consumers by making misrepresentations and untrue statements about the Class Products, namely, Defendant sold the Products with labeling claiming the Products contained "no artificial ingredients" and made false representations to Plaintiff and other putative class members in order to solicit these transactions.

88. Specifically, Defendant claimed the Products "no artificial ingredients" when the Products contained artificial lactic acid.

89. Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class and Sub-Class Members.

90. As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property. Plaintiff reasonably relied upon Defendant's fraudulent statements regarding the Products, namely that they did not know the Products contained artificial ingredients. In

20

reasonable reliance on Defendant's omissions of material fact and false advertisements, Plaintiff and other Class and Sub-Class Members purchased the Products. In turn Plaintiff and other Class Members ended up with products that turned out to actually be different than advertised, and therefore Plaintiff and other Class Members have suffered injury in fact.

91. Plaintiff alleges that these false and misleading written representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

92. Defendant advertised to Plaintiff and other putative class members, through written representations and omissions made by Defendant and its employees, that the Class Products contain "no artificial ingredients"

93. Defendant knew that the Class Products did in fact contain artificial lactic acid.

94. Thus, Defendant knowingly sold Class Products to Plaintiff and other putative class members that contained artificial lactic acid and were not as advertised.

95. The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class and Sub-Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

    a. An order certifying the Class and the California Sub-Class and appointing Plaintiff as Representative of the Class and the California Sub-Class;

    b. An order certifying the undersigned counsel as the Class and California Sub-Class Counsel;

21

c. An order requiring Defendant, at its own cost, to notify all members of the Class and the California Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d. Judgment against Defendant in an amount to be determined at trial;

e. Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

f. Any other relief deemed just and proper by this Court.

## COUNT VI
## VIOLATIONS OF UNFAIR BUSINESS PRACTICES ACT
### (Cal. Bus. & Prof. Code §§ 17200 *et seq*.)
### (On behalf of the Class and California Sub-Class)

96. Plaintiff incorporates by reference each allegation set forth above in paragraphs 1 through 53.

97. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

### UNFAIR

98. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right

22

to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

99. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

100. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to sell them fraudulently labeled products (Class Products). Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class and Sub-Class.

101. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Class Products contained "no artificial preservatives" in order to induce them to spend money on said Class Products. In fact, knowing that Class Products, by their objective terms contained artificial lactic acid, unfairly profited from their sale, in that Defendant knew that the expected benefit that Plaintiff would receive from this feature is nonexistent, when this is typically never the case in situations involving consumer products. Thus, the injury suffered by Plaintiff and the members of the Class and Sub-Class is not outweighed by any countervailing benefits to consumers.

102. Finally, the injury suffered by Plaintiff and members of the Class and California Sub-Class is not an injury that these consumers could reasonably have avoided. After Defendant, fraudulently labeled the Class Products as containing "no artificial preservatives" the Plaintiff, Class members, and Sub-Class Members suffered injury in fact due to Defendant's sale of Class Products to them. Defendant failed to take reasonable steps to inform Plaintiff and Class and Sub-Class members that the Class Products contained artificial lactic acid and are not as advertised as a result. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase the products. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

103. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

104.    California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice."   In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

105.    The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

106.    Here, not only were Plaintiff and the Class and Sub-Class members likely to be deceived, but these consumers were actually deceived by Defendant.  Such deception is evidenced by the fact that Plaintiff agreed to purchase Class Products at a price premium even though the Products contained artificial lactic acid.  Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

107.    As explained above, Defendant deceived Plaintiff and other Class Members by labeling the Products containing "no artificial preservatives" when in fact the Products contain artificial lactic acid.

108.    Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

109.    California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

110.    As explained above, Defendant deceived Plaintiff and other Class Members by labeling the Products as containing "no artificial preservatives" when in fact the Products contain artificial lactic acid.

111.    Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class and Sub-Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq.

24

112. Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiff and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members. These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

113. Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class and Sub-Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a. An order certifying the Class and the California Sub-Class and appointing Plaintiff as Representative of the Class and the California Sub-Class;

b. An order certifying the undersigned counsel as the Class and California Sub-Class Counsel;

c. An order requiring Defendant, at its own cost, to notify all members of the Class and the California Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d. Judgment against Defendant for full restitution of all funds acquired from Plaintiff and Class and Sub-Class Members from the sale of misbranded Class Products during the relevant class period;

e. Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

f. Any other relief deemed just and proper by this Court.

## COUNT VII
## Violation of Consumer Legal Remedies Act
## (Cal. Civ. Code § 1750 et seq.)
## On behalf of the class and California sub-class

114. Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 53 above as if fully reiterated herein.

115. Defendants' actions as detailed above constitute a violation of the Consumer Legal Remedies Act, Cal. Civ. Code §1770, to the extent that Defendants violated the following provisions of the CLRA:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; Cal. Civ. Code § 1770(5);

b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; Cal. Civ. Code § 1770(7);

c. Advertising goods or services with intent not to sell them as advertised; Cal. Civ. Code §1770(9);

d. Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; Cal. Civ. Code §1770(14); and

e. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; Cal. Civ. Code §1770(16);

116.    On or about May 21, 2025, through her Counsel of record, using certified mail with a return receipt requested, Plaintiff served Defendant with notice of their violations of the CLRA, and asked that Defendant correct, repair, replace, or otherwise rectify the goods and services alleged to be in violation of the CLRA; this correspondence advised Defendant that it must take such action within thirty (30) calendar days, and pointed Defendant to the provisions of the CLRA that Plaintiffs believe to have been violated by Defendant. Defendant has not replied to this notice letter with a letter dated on or before June 21, 2025, and thus refused to adequately correct, repair, replace, or otherwise rectify the issues raised therein

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a.  An order certifying the Class and the California Sub-Class and appointing Plaintiff as Representative of the Class and the California Sub-Class;

b.  An order certifying the undersigned counsel as the Class and California Sub-Class Counsel;

c.  An order requiring Defendant, at its own cost, to notify all members of the Class and the California Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.  Judgment against Defendant in an amount to be determined at trial;

e.  Judgement against Defendant for all statutory damages and statutorily enhanced damages;

f.  Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

g.  Any other relief deemed just and proper by this Court.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiff prevail on any of his claims in this action.

RESPECFULLY SUBMITTED,

JOHN DALY, PERRY A. BRUNO and MELISSA FURMAN

/s/ Todd M. Friedman Esq.
Todd M. Friedman
Attorney for Plaintiff
Illinois Attorney No. 6276496
Law Offices of Todd M. Friedman, P.C.
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: (323) 306-4234
tfriedman@toddflaw.com


/s/ Steven G. Perry Esq.
Steven G. Perry
Attorney for Plaintiff
Cook County Attorney No.: 63294
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
707 Skokie Blvd., Suite 600
Northbrook, IL 60062
Phone: (224) 218-0875
Steven.perry@toddflaw.com

28

## CERTIFICATE OF SERVICE

I hereby certify that, on August 18, 2025, a copy of the foregoing First Amended Class Action Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Steven G. Perry
Attorney for Plaintiff