**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JOHN DALY, PERRY A. BRUNO, and MELISSA FURMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KRAFT HEINZ FOODS COMPANY, LLC,<br><br>Defendant. | Case No. 1:25-cv-7185<br><br>The Honorable Franklin U. Valderrama |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST**
**AMENDED COMPLAINT OR STRIKE NATIONWIDE CLASS ALLEGATIONS**

**JENNER & BLOCK LLP**

Dean N. Panos
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendant
Kraft Heinz Foods Company
(incorrectly named as "Kraft Heinz Foods
Company, LLC")

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

BACKGROUND ...........................................................................................................................2

ARGUMENT .................................................................................................................................4

I.      Plaintiffs Have Not Plausibly Alleged That the Lactic Acid in Philadelphia Cheesecake Crumbles Is an "Artificial Preservative." ..........................................................4

      A.      Plaintiffs have not plausibly alleged that the lactic acid in Philadelphia Cheesecake Crumbles is "artificial." ........................................................5

      B.      Plaintiffs have not plausibly alleged that the lactic acid in Philadelphia Cheesecake Crumbles *actually* acts as a preservative. ...........................................9

II.     The Court Should Strike Plaintiffs' Nationwide Class Allegations...................................12

CONCLUSION.............................................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................................12

*Astiana v. Kashi Co.,*
291 F.R.D. 493 (S.D. Cal. 2013) ............................................................................6

*In re Bridgestone/Firestone, Inc.,*
288 F.3d 1012 (7th Cir. 2002) ..............................................................................13

*Clay v. Am. Tobacco Co.,*
188 F.R.D. 483 (S.D. Ill. 1999) .......................................................................13, 14

*Cowen v. Lenny & Larry's, Inc.,*
2017 WL 4572201 (N.D. Ill. Oct. 12, 2017)...........................................................12

*Daly v. Glanbia Performance Nutrition, Inc.,*
2023 WL 5647232 (N.D. Ill. Aug. 31, 2023) .....................................................13, 14

*Esser v. McIntyre,*
661 N.E.2d 1138 (Ill. 1996).....................................................................................13

*In re Gen. Mills Glyphosate Litig.,*
2017 WL 2983877 (D. Minn. July 12, 2017) ..........................................................7

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982)................................................................................................12

*Hayes v. Kraft Heinz Co.,*
2024 WL 4766319 (N.D. Ill. Nov. 13, 2024) ..........................................................7

*Hill v. Wells Fargo Bank, N.A.,*
946 F. Supp. 2d 817 (N.D. Ill. 2013) ....................................................................12

*Hoffman v. Kraft Heinz Foods Co.,*
2023 WL 1824795 (S.D.N.Y. Feb. 7, 2023)............................................................6

*Hu v. Herr Foods, Inc.,*
251 F. Supp. 3d 813 (E.D. Pa. 2017) ....................................................................11

*Ivie v. Kraft Foods Global, Inc.,*
961 F. Supp. 2d 1033 (N.D. Cal. 2013) ................................................................11

*Kubilius v. Barilla America, Inc.*,
2019 WL 2861886 (N.D. Ill. July 2, 2019)................................................................14, 15

*Miller v. Gen. Motors Corp.*,
2003 WL 168626 (N.D. Ill. Jan. 26, 2003) ....................................................................14

*Patel v. Zillow, Inc.*,
2018 WL 2096453 (N.D. Ill. May 7, 2018) ......................................................................7

*Pelayo v. Nestle USA, Inc.*,
989 F. Supp. 2d 973 (C.D. Cal. 2013) ..............................................................................7

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
2006 WL 3754823 (N.D. Ill. Dec. 18, 2006)..................................................................14

*Siegel v. Shell Oil Co.*,
256 F.R.D 580 (N.D. Ill. 2008).......................................................................................13

*Siegel v. Shell Oil Co.*,
612 F.3d 932 (7th Cir. 2010) ..........................................................................................13

*Svensrud v. Frito-Lay N. Am., Inc.*,
2020 WL 8575056 (C.D. Cal. Dec. 21, 2020) ..................................................................6

*Tamayo v. Blagojevich*,
526 F.3d 1074 (7th Cir. 2008) ..........................................................................................7

*Tanner v. Jupiter Realty Corp.*,
433 F.3d 913 (7th Cir. 2006) ..........................................................................................13

*Tylka v. Gerber Prods. Co.*,
178 F.R.D. 493 (N.D. Ill. 1998).......................................................................................14

*Valencia v. Snapple Beverage Corp.*,
2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024) ..............................................................1, 8

*Vineyard v. La Terra Fina USA, LLC*,
2025 WL 958319 (S.D. Ill. Mar. 31, 2025) ......................................................................6

*Vulcan Golf LLC v. Google Inc.*,
254 F.R.D. 521 (N.D. Ill. 2008).......................................................................................14

**Statutes**

805 ILCS 505/1 *et seq.*........................................................................................................4

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ..........................................................................4

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ..........................................................................4

Cal. Civ. Code §§ 1750 *et seq.*................................................................................4

Nev. Rev. Stat. § 598 *et seq.* ...............................................................................4

**Other Authorities**

21 C.F.R. § 101.22 .............................................................................................9, 10

pH, *Merriam-Webster Online Dictionary*, https://www.merriam-
    webster.com/dictionary/pH .............................................................................10

**INTRODUCTION**

This lawsuit alleges that Kraft Heinz mislabels its Philadelphia Cheesecake Crumbles products with the phrase "No Artificial Preservatives." Plaintiffs claim that this statement is false because the products contain lactic acid, which Plaintiffs characterize as a "chemical preservative." First Am. Compl. ("FAC") ¶ 17. To prevail based on that theory, Plaintiffs must plausibly allege not only that the lactic acid in the products is "artificial," but also that it functions as a "preservative." Plaintiffs' factual allegations do not substantiate either of those premises.

Plaintiffs allege that the lactic acid in the products is "artificial" because it is "produced through genetically engineered bacterial fermentation and acid base synthesis." *Id.* ¶ 14. But the method of manufacturing lactic acid that Plaintiffs describe in their complaint is the precise method that the USDA has approved to manufacture "nonsynthetic" lactic acid, which the USDA permits in organic products. *See* RJN Ex. 1. It does not matter whether it is theoretically possible to produce "artificial" lactic acid. What matters is that Plaintiffs' allegations establish that the lactic acid in the products is not "artificial"—which means it cannot be an "artificial preservative."

Moreover, even if Plaintiffs had plausibly alleged that the lactic acid in the products was synthesized using an "artificial" *process* (which they have not), that does not mean that reasonable consumers would regard the resulting *ingredient* as "artificial." Indeed, another federal court has applied this precise reasoning to dismiss a lawsuit in which the plaintiff—like Plaintiffs here—alleged that an ingredient was "artificial" because it was produced via chemical fermentation. *See Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476, at *5–6 (S.D.N.Y. Mar. 18, 2024). As the *Valencia* court explained, it is implausible that a reasonable consumer would "think that a compound found in nature is artificial" simply because "it is produced in a different way than nature produces it." *Id.* at *6. That reasoning applies with equal force here.

1

Leaving aside their failure to allege that the lactic acid in Philadelphia Cheesecake Crumbles is "artificial," Plaintiffs' lawsuit also fails because they have not plausibly alleged that the lactic acid actually functions as a "preservative." Even if Plaintiffs are correct that lactic acid *can* act as a preservative, the USDA has recognized that lactic acid can serve many other functions. Although Plaintiffs now allege that lactic acid often acts as an "antimicrobial agent in cheeses" (FAC ¶ 17), that bare-bones allegation is still insufficient to substantiate Plaintiffs' conjecture that lactic acid *actually* acts as a preservative in the product. Absent any factual allegations that support their speculation that the lactic acid functions as a preservative, Plaintiffs cannot hold Kraft Heinz liable for stating that Philadelphia Cheesecake Crumbles contain no artificial preservatives.

Finally, even if this Court allows Plaintiffs' lawsuit to proceed, it should strike their nationwide class allegations. Although Plaintiffs attempt to assert claims for common-law fraud and unjust enrichment on behalf of a putative nationwide class, those claims are governed by the laws of each individual state—which means that those claims are not amenable to class-wide treatment. Under similar circumstances, many courts in this District have struck nationwide class allegations at the pleading stage. This Court should do the same here.

**BACKGROUND**

This lawsuit concerns Philadelphia Cheesecake Crumbles, which are pre-packaged desserts that contain a creamy cheesecake base and crumbled crust topping. Certain versions of the labeling include the phrase "No Artificial Preservatives, Flavors, or Dyes." *See* FAC ¶ 24. Plaintiffs allege that this statement is false because the products contain "manufactured, artificial lactic acid," which allegedly functions as a "chemical preservative." *Id.* ¶¶ 13, 17.

According to Plaintiffs, "[m]anufactured lactic acid is produced through genetically engineered bacterial fermentation and acid base synthesis." *Id.* ¶ 14. Notably, the method of manufacturing lactic acid Plaintiffs describe in their complaint closely parallels the method that

2

the USDA has outlined for the production of "nonsynthetic" lactic acid, which the USDA approved

for use in "organic" foods. *See* RJN Ex. 1. A side-by-side comparison highlights the similarities:

| Plaintiffs' Alleged Method of Producing "Artificial" Lactic Acid | USDA's Description of Producing "Nonsynthetic" Lactic Acid |
|---|---|
| Genetically engineered bacteria are fed a carbohydrate feedstock like glucose or sucrose and excrete lactic acid as a part of their biological metabolic process. Lactic acid is then collected and refined by removing dead bacteria cells through Rotary Drum Vacuum Filter. Lactic acid is then purified and extracted by adding a calcium salt like calcium carbonate CaCo3 (lime, chalk) to cause a spontaneous synthetic acid-base reaction between the calcium carbonate and the lactic acid. The result of that synthetic reaction is the salt calcium lactate. To purify and successfully convert the calcium lactate to lactic acid an additional industrial chemical, sulfuric acid is added to produce lactic acid and calcium sulfate (gypsum) the gypsum is then collected, and the lactic acid can then be further purified with organic solvents.<br><br>(FAC ¶ 11.) | Lactic acid is produced by the fermentation of natural food sources such as dextrose (from corn) and sucrose (from sugarcane or sugar beets) or starch (from barley, corn, malt, potato, rice, tapioca or wheat). The substrate is fermented to lactic acid by food grade microorganisms. During the fermentation process, the pH is kept at a constant value by the addition of lime/chalk (calcium carbonate), which neutralizes the acid and results in the formation of calcium lactate. For the purification process, after fermentation has ended, the calcium lactate-containing broth is generally heated to 70 °C to kill the bacteria, filtered to remove cells, carbon-treated, evaporated, and acidified with sulfuric acid to pH 1.8 to convert the salt into lactic acid. The by-product, insoluble calcium sulfate (gypsum), is removed by filtration.<br><br>(RJN Ex. 1, at 3.) |

As the USDA guidance makes clear, "[l]actic acid is widely used in almost every segment

of the food industry, where it carries out a wide range of functions." RJN Ex. 1, at 4; *see also id.*

at 5 (noting that lactic acid can be used "as an antimicrobial agent, curing and pickling agent, flavor

enhancer, flavoring agent and adjuvant, pH control agent, and as a solvent and vehicle"). In

particular, lactic acid is commonly used to enhance the flavor of many food products. For example,

the USDA has recognized that lactic acid "produces a mild and pleasant taste in acid pickles,

relishes, and salad dressings." *Id.* The USDA has also recognized that lactic acid "improves the

taste and flavor of many beverages, such as soft drinks, mineral waters, and carbonated fruit

juices." *Id.* at 5. And it has similarly recognized that lactic acid can be used in canned fish products "to improve the taste and flavor[] and to mask amine flavor from fish meal." *Id.*

Nonetheless, even though the USDA recognizes that lactic acid is commonly used to enhance the flavor of food products, Plaintiffs assert that it is a preservative because it "tends to prevent or retard deterioration" of foods. FAC ¶ 16. Because lactic acid is allegedly a "chemical that retards the deterioration of food products" and that "acts as an antimicrobial agent in cheeses," Plaintiffs allege that it must be a "chemical preservative." *Id.* ¶ 17.

Based on these allegations, Plaintiffs assert four sets of claims against Kraft Heinz in this action. First, Plaintiffs assert a claim under the Illinois Consumer Fraud Act ("ICFA"), 805 ILCS 505/1 *et seq.*, on behalf of a putative nationwide class and a putative "Illinois Sub-Class." *See* Compl. ¶¶ 53–61. Second, Plaintiffs assert a claim under the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. § 598 *et seq.*, on behalf of a putative nationwide class, a putative "Nevada Sub-Class," and a putative "Nevada Elderly Sub-Class." *See* FAC ¶¶ 73–88. Third, Plaintiffs assert claims under the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, on behalf of a putative "California Sub-Class." *See* FAC ¶¶ 89–121. Fourth, Plaintiffs assert claims for common-law fraud and unjust enrichment on behalf of a putative nationwide class. *See id.* ¶¶ 62–72.

## **ARGUMENT**

I. **Plaintiffs Have Not Plausibly Alleged That the Lactic Acid in Philadelphia Cheesecake Crumbles Is an "Artificial Preservative."**

Plaintiffs' claims all hinge on their allegation that Philadelphia Cheesecake Crumbles contain "artificial preservatives." *See* FAC ¶ 1. To prevail on these claims, Plaintiffs must allege

4

not only that the lactic acid in the products is "artificial," but also that the lactic acid acts as a "preservative." Plaintiffs' allegations do not render either of these premises plausible.

> **A.** **Plaintiffs have not plausibly alleged that the lactic acid in Philadelphia Cheesecake Crumbles is "artificial."**

The labeling of Philadelphia Cheesecake Crumbles does not claim that the product is free of preservatives. Instead, it represents only that the product contains "No *Artificial* Preservatives." FAC ¶ 24 (emphasis added). For that claim to be false, Plaintiffs must plausibly allege that the lactic acid in the product is artificial. But Plaintiffs' own allegations confirm that it is not.

Plaintiffs allege that the lactic acid in Philadelphia Cheesecake Crumbles is "artificial" because it is "produced through genetically engineered bacterial fermentation and acid base synthesis." *Id.* ¶ 14. But even if the Court were to credit Plaintiffs' allegation that Kraft Heinz uses lactic acid manufactured in this manner, that factual allegation does not support a plausible claim that the lactic acid in Philadelphia Cheesecake Crumbles is "artificial." To the contrary, the method of producing lactic acid that Plaintiffs outline in their complaint closely parallels the method that the USDA permits for manufacturing "nonsynthetic" lactic acid. *See* RJN Ex. 1, at 3.

That method involves the use of "food grade microorganisms" that consume substrates like dextrose, sucrose, or starch and ferment them into lactic acid. *Id.* "During that fermentation process," the USDA explains, "the pH is kept at a constant value by the addition of lime/chalk (calcium carbonate), which neutralizes the acid and results in the formation of calcium lactate." *Id.* "[A]fter fermentation has ended, the calcium lactate-containing broth is generally heated to 70 °C to kill the bacteria, filtered to remove cells, carbon-treated, evaporated, and acidified with sulfuric acid to pH 1.8 to convert the salt into lactic acid." *Id.* "The by-product, insoluble calcium sulfate (gypsum), is removed by filtration." *Id.* This is the exact method of producing lactic acid

that Plaintiffs allege in their complaint. *See* FAC ¶ 14. The only difference is that Plaintiffs label the resulting lactic acid—which the USDA characterizes as "nonsynthetic"—as "artificial."

The problem is that Plaintiffs' characterization of the lactic acid as "artificial" is a legal conclusion, not a "factual assertion worthy of a presumption of truth." *Vineyard v. La Terra Fina USA, LLC*, 2025 WL 958319, at *6 (S.D. Ill. Mar. 31, 2025) (dismissing lawsuit challenging representation that a bagel spread and dip contained "NO ARTIFICIAL FLAVORS, COLORS, OR PRESERVATIVES"). Many courts have recognized that a bare allegation that an ingredient is "artificial" is insufficient to state a plausible claim. *See, e.g.*, *Hoffman v. Kraft Heinz Foods Co.*, 2023 WL 1824795, at *8 (S.D.N.Y. Feb. 7, 2023) ("Plaintiff's allegations that the Product contains artificial flavors are conclusory statements that the Court is not required to accept."); *Svensrud v. Frito-Lay N. Am., Inc.*, 2020 WL 8575056, at *4 (C.D. Cal. Dec. 21, 2020) (granting motion to dismiss where the plaintiff's "conclusory allegations" were "devoid of any facts suggesting the basis for her claim that the Product contains artificial cheddar"). And the few facts Plaintiffs allege about the process of manufacturing lactic acid simply do not support their claim that the lactic acid in Philadelphia Cheesecake Crumbles is "artificial."

If anything, Plaintiffs' allegations confirm that the lactic acid in Philadelphia Cheesecake Crumbles is manufactured in a manner that the USDA regards as "nonsynthetic" and approves in products labeled as "organic." *See* RJN Ex. 1. That is fatal to Plaintiffs' lawsuit. After all, if an ingredient satisfies the USDA's definition of a "nonsynthetic" ingredient, such that it is permitted in "organic" food products, it is not remotely plausible that a reasonable consumer would regard it as an "artificial" ingredient. *See, e.g.*, *Astiana v. Kashi Co.*, 291 F.R.D. 493, 507–08 (S.D. Cal. 2013) (noting that "consumers . . . often equate 'natural' with 'organic' or hold 'organic' to a

6

higher standard"); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 979 (C.D. Cal. 2013) (similar); *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (similar).

Plaintiffs will likely argue that this Court cannot decide at the pleading stage whether Kraft Heinz uses "natural" or "artificial" lactic acid in the products.[1] But this is not a case in which the parties dispute *which* chemical process the defendant uses to manufacture an allegedly "artificial" ingredient. In other words, the problem is not that Plaintiffs have failed to allege facts supporting their allegation that Kraft Heinz uses lactic acid manufactured in the way they claim. The problem is instead that Plaintiffs' allegations, taken as true, establish that the lactic acid in Philadelphia Cheesecake Crumbles is *not* artificial. Courts throughout the Seventh Circuit have recognized that plaintiffs can "plead[] themselves out of court by alleging facts that defeat their claim." *Patel v. Zillow, Inc.*, 2018 WL 2096453, at *9 (N.D. Ill. May 7, 2018); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (similar). This is one of those cases.

Moreover, even if this Court credited Plaintiffs' allegation that the manufacturing process they outline in their complaint is somehow "artificial," that would not render their claims plausible. At most, it would establish that the lactic acid in Philadelphia Cheesecake Crumbles was manufactured using a synthetic process. But even if a plaintiff alleges that an ingredient is produced using a synthetic *process*, that does not mean that a "reasonable consumer acting

---

[1] For example, Plaintiffs will likely cite *Hayes v. Kraft Heinz Co.*, 2024 WL 4766319 (N.D. Ill. Nov. 13, 2024), to argue that this Court cannot decide at the pleading stage whether the lactic acid in Philadelphia Cheesecake Crumbles is "natural" or "artificial." But the parties' dispute in *Hayes* centered around whether the plaintiffs plausibly alleged that the citric acid in Kraft Mac & Cheese was produced in the specific manner the plaintiffs claimed, which is not the case here. *See id.* at *2–3. The key difference between this case and *Hayes* is that the process of manufacturing lactic acid that ***Plaintiffs allege in their own complaint*** results in lactic acid that the USDA regards as "nonsynthetic" and permits in organic foods—which means it cannot be "artificial."

7

reasonably would regard as unnatural" *ingredients* produced using that allegedly "synthetic" process—as Plaintiffs must allege to state a plausible claim. *Valencia*, 2024 WL 1158476, at *6.

*Valencia* illustrates the logical disconnect in Plaintiffs' theory of deception. There, the plaintiff alleged that Snapple mislabeled its beverages as "All Natural," even though they contained allegedly artificial citric acid. *See id.* at *1. Although the plaintiff acknowledged that citric acid occurred in nature, she alleged that the citric acid in Snapple's beverages was "made beginning with fermentation from the *Aspergillus niger* mold" and "recovered through numerous chemical reactions with synthetic mineral salts and reagents." *Id.* at *5. The plaintiff alleged that this process resulted in "an industrially produced, synthetic ingredient" that made it misleading for Snapple to label its beverages as "All Natural." *Id.* The court dismissed her lawsuit.

In reaching that conclusion, the *Valencia* court noted that the plaintiff had not articulated any way "in which the citric acid derived from *Aspergillus niger* differs chemically from the citric acid derived from citrus fruits." *Id.* The court found this fact fatal to the plaintiff's claims of deception, as "[a] reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it, if the way it is produced is that it is derived from a natural product and does not contain anything synthetic." *Id.*

Here too, Plaintiffs have not pleaded *any* facts that suggest that reasonable consumers would view the lactic acid in Philadelphia Cheesecake Crumbles as "artificial." Even if this Court credited Plaintiffs' implausible allegation that the method used to create the lactic acid in Philadelphia Cheesecake Crumbles is "artificial," Plaintiffs have alleged no facts suggesting that the resulting lactic acid is different in any meaningful sense from the "natural" version of this ingredient. Plaintiffs attempted to plead around this problem by alleging that "[t]he 'No Artificial Preservatives' statement on the labels of the Products is material to reasonable consumers" and

that many consumers value claims that food products are "free from" specific ingredients. FAC ¶ 23. But this allegation begs the question of whether reasonable consumers would view the lactic acid in the products as "artificial" simply because it is produced using a specific manufacturing process—particularly since the USDA has deemed lactic acid manufactured using that process as "nonsynthetic." Absent any allegation that reasonable consumers would regard the lactic acid in Philadelphia Cheesecake Crumbles as "artificial," Plaintiffs cannot plausibly allege that the presence of lactic acid renders the "No Artificial Preservatives" statement false.

> **B.** **Plaintiffs have not plausibly alleged that the lactic acid in Philadelphia Cheesecake Crumbles *actually* functions as a preservative.**

Even if Plaintiffs *had* plausibly alleged that the lactic acid in Philadelphia Cheesecake Crumbles is "artificial," which they have not, their claims still fail because they have not plausibly alleged that lactic acid *actually* functions as a preservative.

As Plaintiffs note in their complaint, the FDA defines a "preservative" as a "chemical that, when added to food, tends to prevent or retard deterioration thereof." 21 C.F.R. § 101.22(a)(5); *see also* FAC ¶ 12. Plaintiffs allege that lactic acid is a "chemical preservative" because it "functions in pH reduction, flavor enhancement, and microbial inhibition" and therefore "tends to prevent or retard deterioration" of food." FAC ¶¶ 15–17. But even if lactic acid *can* act as a preservative, Plaintiffs' allegations do not establish that the lactic acid *actually* functions as a preservative in the products—as is required for the "No Artificial Preservatives" claim to be false.

To the contrary, the USDA has recognized that lactic acid "carries out a wide range of functions" other than preserving food, including by acting as a "flavor enhancer" or as a "flavoring agent and adjuvant." RJN Ex. 1, at 4–5. For example, the USDA has observed that lactic acid "produces a mild and pleasant taste in acid pickles, relishes, and salad dressings" and that it "improves the taste and flavor of many beverages." *Id.* at 5. Plaintiffs attempt to plead around

this defect by alleging that "lactic acid is specifically an antimicrobial agent in cheeses, such as in Defendant's Products which are cheesecake desserts." FAC ¶ 17; *see also id.* ¶ 15 (alleging that "[t]he concentration of undissociated lactic acid in cheeses increases with the increase in total lactic acid content and is negatively correlated with pH"). But the fact that lactic acid is "negatively correlated with pH" simply reflects the fact that it is an acid—not that it acts as a preservative. *See generally* pH, *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/pH (defining pH as "a measure of acidity and alkalinity of a solution that is a number on a scale on which . . . lower numbers indicate increasing acidity and higher numbers increasing alkalinity"). And even if Plaintiffs' allegations might establish that lactic acid *can* act as an "antimicrobial agent" in some cheeses, they do not establish that it *does* function as a preservative in the product at issue—which means that Plaintiffs have not stated a plausible claim.

Indeed, while Plaintiffs cite the FDA's regulatory definition of "preservatives" to support their claims of mislabeling, the regulation they cite—21 C.F.R. § 101.22—actually undermines their allegation that lactic acid acts as a preservative in Philadelphia Cheesecake Crumbles. Under that regulation, a "food to which a chemical preservative[] is added" must "bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative,' 'to retard spoilage,' 'a mold inhibitor,' 'to help protect flavor' or 'to promote color retention.'" 21 C.F.R. § 101.22(j). Here, the labeling of Philadelphia Cheesecake Crumbles—which complies in exacting detail with the FDA regulations—includes lactic acid in the ingredient line but does not include a parenthetical description of its function. *See* RJN Ex. 2. In contrast, the labeling specifically describes another ingredient in the product, natamycin, as a "natural mold inhibitor." *See id.* The only logical conclusion is that Kraft Heinz does not include a "separate description of [the] function" of lactic acid because it does not act as a preservative.

10

Many other courts have dismissed similar lawsuits when the plaintiff's allegations did not establish that the offending ingredient served the function the plaintiff claimed it did. For example, in *Hu v. Herr Foods, Inc.*, the plaintiff alleged that the defendant mislabeled its products with the phrase "No Preservatives Added," even though they contained citric acid. 251 F. Supp. 3d 813, 816–17 (E.D. Pa. 2017). The court dismissed this lawsuit and held that the plaintiff had not plausibly alleged that citric acid actually acted as a preservative in the products. *Id.* at 821–22.

In so holding, the court specifically rejected the plaintiff's argument that reasonable consumers view citric acid as a preservative "regardless of its functionality—*i.e.*, even if [it] does not actually preserve that particular product." *Id.* at 821. And while the plaintiff asked the court to "draw a chain of inferences that . . . warrant the conclusion that Defendant decided to use citric acid in an attempt to preserve its [p]roducts," the court explained that these "arguments and speculations are not supported by well-pleaded factual allegations" and emphasized that it "need not accept them as true." *Id.* at 822–23.

Similarly, in *Ivie v. Kraft Foods Global, Inc.*, the court dismissed a lawsuit alleging that Kraft Heinz's predecessor, Kraft Foods, mislabeled its products with the phrase "natural flavors" even though they contained sodium citrate and potassium citrate, which the plaintiff characterized as "artificial flavors." 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013). "While these substances may be artificial *ingredients*," the court reasoned, the plaintiffs' allegations did not establish that "these ingredients are *flavors*, artificial or otherwise." *Id.* (emphasis added). As the court explained, a "bare, conclusory assertion that these two ingredients 'simulate[], resemble[], or reinforce[] the characterizing [lemon] flavor . . . is insufficient." *Id.* at 1042 (alteration in original).

Here, as in *Hu* and *Ivie*, Plaintiffs have not plausibly alleged that the lactic acid in Philadelphia Cheesecake Crumbles *actually* functions as a preservative. Even if Plaintiffs'

11

allegations were sufficient to establish that lactic acid *could* act as a "preservative," the "mere possibility" that this ingredient serves that function is not enough to state a plausible claim that it *actually* functions as a preservative *in this product*. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Absent any plausible allegation that the lactic acid functions as a preservative and does not serve some other function in the product, this Court should dismiss Plaintiffs' lawsuit.

## II. The Court Should Strike Plaintiffs' Nationwide Class Allegations.

In addition to their claims under California, Illinois, and Nevada's consumer protection statutes (which Plaintiffs assert on behalf of putative California, Illinois, and Nevada subclasses), Plaintiffs also assert claims for common-law fraud and unjust enrichment on behalf of a putative nationwide class. *See* FAC ¶ 46 (defining the "Class"); *id.* ¶¶ 62–72 (asserting claims for common-law fraud and unjust enrichment on behalf of the putative nationwide class). Because these claims are governed by the varying common laws of all fifty states and are unsuited to class-wide treatment, this Court should strike Plaintiffs' nationwide class allegations.

The Supreme Court has empowered courts to strike class allegations at the pleading stage when the defects in the class allegations are "plain enough from the pleadings." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also, e.g.*, *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) (granting motion to strike class allegations and noting that "sometimes the complaint will make it clear that class certification is inappropriate"); *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201, at *4 (N.D. Ill. Oct. 12, 2017) ("District courts, both within this district and others, have held that a motion to strike class allegations . . . is an appropriate device to determine whether the case will proceed as a class action."). Moreover, the Seventh Circuit has made clear that "[n]o class action is proper unless all litigants are governed by the same legal rules" and that "warranty, fraud, or products-liability suits may not proceed as

12

nationwide classes." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). Those principles foreclose Plaintiffs' effort to assert claims on behalf of a nationwide class.

"Federal courts in Illinois use Illinois' choice of law rules to determine the applicable substantive law." *Daly v. Glanbia Performance Nutrition, Inc.*, 2023 WL 5647232, at *3 (N.D. Ill. Aug. 31, 2023). For tort claims, such as claims for common-law fraud and unjust enrichment, "Illinois uses the 'most significant relationship' test." *Id.* This test nominally requires the court to consider several factors, including "where the injury occurred," "where the injury-causing conduct occurred," "the domicile of the parties," and "where the relationship of the parties is centered." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006) (quoting *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996)). But "[u]nless another state has a more significant relationship to the parties or the occurrence, the law of the place of injury controls." *Daly*, 2023 WL 5647232, at *3; *see also Bridgestone/Firestone*, 288 F.3d at 1017 (noting that, in cases of "consumer fraud," the "injury is decidedly where the *consumer* is located") (emphasis in original).

Consistent with that principle, federal courts in Illinois have agreed that claims premised on allegedly false advertising—including common-law claims—are governed by the law of the state in which each class member's purchase took place.[2] As a result, each class member's claim for unjust enrichment or common-law fraud will be governed by the law of his or her state. That is fatal to Plaintiffs' effort to assert those claims on behalf of a nationwide class, as those claims will not be "governed by the same legal rules." *Bridgestone/Firestone*, 288 F.3d at 1015.

---

[2] *See, e.g.*, *Daly*, 2023 WL 5647232, at *3 ("[E]ach litigant in the proposed nationwide class will be governed by the law of the state where they purchased a Protein Bar."); *Siegel v. Shell Oil Co.*, 256 F.R.D 580, 585 (N.D. Ill. 2008), (denying class certification in lawsuit challenging "false representations" about gas pricing and holding that "the place of each class member's gas purchase govern[s] that class member's claims") *aff'd*, 612 F.3d 932 (7th Cir. 2010); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 498 (S.D. Ill. 1999) (noting that the plaintiffs' injury "occurred at the location of each sale, and each sale occurred in one of 47 different states").

13

To the contrary, courts throughout the Seventh Circuit have recognized that "[t]he laws of unjust enrichment vary from state to state." *Clay*, 188 F.R.D. at 500.[3] The same is true of Plaintiffs' common-law fraud claim, as "the nuances of . . . 50 common laws" of fraud render a nationwide class unmanageable. *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 498 (N.D. Ill. 1998); *see also, e.g.*, *Miller v. Gen. Motors Corp.*, 2003 WL 168626, at *2 (N.D. Ill. Jan. 26, 2003) ("No court has held that the fifty states' . . . common laws of fraudulent omission[] are so similar that a single forum state's law could be applied to a multi-state class.").

For that reason, many courts in this District have granted motions to strike nationwide class allegations where the plaintiffs attempted to assert common-law claims on behalf of a nationwide class. In *Daly*, for example, the plaintiff—who is one of the Plaintiffs in this lawsuit and was represented by the same counsel who filed this case—challenged the labeling of the defendant's protein bars and attempted to assert claims for common-law fraud and unjust enrichment on behalf of a putative nationwide class. *See Daly*, 2023 WL 5647232, at *1. Judge Alonso struck the plaintiff's nationwide class allegations. As Judge Alonso explained, "a nationwide class for Daly's common-law claims would be unmanageable" in light of the "material differences among various states' common-law fraud and unjust enrichment laws." *Id.* at *4.

Similarly, in *Kubilius v. Barilla America, Inc.*, the plaintiff alleged that the defendant mislabeled its pasta sauces as containing "no preservatives" and asserted a common-law fraud claim on behalf of a putative nationwide class. 2019 WL 2861886, at *1 (N.D. Ill. July 2, 2019). Judge Bucklo granted the defendant's motion to strike the nationwide class allegations. *See id.* at

---

[3] *See also In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2006 WL 3754823, at *1 n.3 (N.D. Ill. Dec. 18, 2006) ("It is clear just from our review of Illinois law that unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone amongst the fifty states."); *Vulcan Golf LLC v. Google Inc.*, 254 F.R.D. 521, 532–33 (N.D. Ill. 2008) (collecting cases discussing variation in unjust enrichment laws).

*2–3. In so holding, Judge Bucklo noted that "actions such as the one plaintiff proposes are disfavored" and agreed with the defendant that adjudicating a common-law fraud claim on behalf of a nationwide class would be unmanageable. *Id.* at *2.

Here too, there is no manageable way in which this Court could adjudicate an unjust enrichment or common-law fraud claim under the laws of all fifty states. And because this is a "legal challenge," there is no need to wait until class certification to make that determination. *Id.* Even if the Court allows this case to proceed, it should strike the nationwide class allegations.

**CONCLUSION**

This Court should dismiss Plaintiffs' lawsuit without further leave to amend.

Dated: September 2, 2025

Respectfully submitted,

By: /s/ Dean N. Panos

Dean N. Panos (ARDC No. 6203600)
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 923-2765
Facsimile: (312) 527-0484
dpanos@jenner.com

Alexander M. Smith
Jenner & Block LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: (213) 239-2262
Facsimile: (213) 239-5199
asmith@jenner.com

Attorneys for Defendants
Kraft Heinz Foods Company
(incorrectly named as "Kraft Heinz
Foods Company, LLC")

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed on September 2, 2025 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.


Dated:  September 2, 2025                              By: _____ /s/ Dean N. Panos _____
                                                                              Dean N. Panos

16