# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JOHN DALY, PERRY A. BRUNO, and MELISSA FURMAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>THE KRAFT HEINZ COMPANY, and KRAFT HEINZ INGREDIENTS CORP.<br><br>        Defendants. | Case No. 1:25-cv-07185 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, TO STRIKE NATIONWIDE CLASS ALLEGATIONS**

**Law Offices of Todd M. Friedman, P.C.**
Steven G. Perry
Steven.perry@toddflaw.com
707 Skokie Blvd., Suite 600
Northbrook, Illinois 60062
Phone: (224) 218-0875
Fax: (866) 633-0228

Todd M. Friedman
tfriedman@toddflaw.com
21031 Ventura Blvd., #340
Woodland Hills, California 91364
Phone: (323) 306-4234
Fax: (866) 633-0228

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I.    INTRODUCTION    1

II.    FACTUAL BACKGROUND    1

III.    LEGAL STANDARD    2

IV.    ARGUMENT    3
    A. DEFENDANT'S ARGUMENTS ARE INAPPROPRIATE FOR A
       MOTION TO DISMISS    3
    B. DEFENDANT'S ATTEMPT TO DISMISS PLAINTIFF'S
       NATIONWIDE CLAIMS IS PREMATURE    13

V.    CONCLUSION    14

# TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................................................. 2, 3

*Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) ...................................................................... 2, 3

Bell v. Publix Super Markets, Inc. ...................................................................................................... 11

*Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ...................................................................... 3

Branca v. Bai Brands, LLC,
2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) ........................................................................... 10

Cabrega v. Campbell Soup Co.,
2019 WL 13215191 (E.D.N.Y. Nov. 18, 2019) ........................................................................ 12

*Chen-Oster v. Goldman, Sachs & Co.*, 2012 U.S. Dist. LEXIS 12961 (S.D.N.Y. Jan. 19, 2012)............. 14

*Clerkin v. MyLife.com, Inc.*, 2011 U.S. Dist. LEXIS 96735 (N.D. Cal. Aug. 29, 2011) ................... 13

*Connelly v. Hilton Grand Vacations Co.*, 2012 U.S. Dist. LEXIS 81332 (S.D. Cal. June 11, 2012)......... 14

*Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2011 U.S. Dist. LEXIS 147489  (N.D. Cal. Dec. 22, 2011) ........................................................................................................................................ 14

*Flaherty v. Clinique Lab'ys LLC*,
2021 WL 5299773 (N.D. Ill. Nov. 15, 2021).......................................................................... 14

*Hibbs-Rines v. Seagate Techs., LLC*, 2009 U.S. Dist. LEXIS 19283 (N.D. Cal. Mar. 2, 2009) ......................... 13

Hu v. Herr Foods, Inc.,
 251 F. Supp. 3d 813 (E.D. Pa. 2017) ...................................................................................... 12

*I.B. v. Facebook, Inc.*, 2012 U.S. Dist. LEXIS 154327 (N.D. Cal. Oct. 25, 2012) ............................ 13

*In re Gen. Mills Glyphosate Litig.*, plaintiffs challenged the label "Made with 100% Natural Whole Grain Oats". No. CV 16-2869 (MJD/BRT), 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) .................... 7

Ivie v. Kraft Foods Global, Inc.,
2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ........................................................................... 10

Kelly v. Beliv LLC,
640 F. Supp. 3d 286 (S.D.N.Y. 2022)...................................................................................... 12

Kubilius v. Barilla Am., Inc.,
2019 WL 2861886 (N.D. Ill. July 2, 2019).............................................................................. 10

*Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232 (S.D. Cal. 2009) .................................................... 13

Morris v. Mott's LLP,
2019 WL 948750 (C.D. Cal. Feb. 26, 2019)............................................................................ 10

Quiroz v. Beaverton Foods, Inc.,
2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019) ......................................................................... 10

Silva v. Smucker Nat. Foods, Inc.,
2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015).......................................................................... 10

Simeone v. T. Marzetti Co.,
2023 WL 2665444 (S.D.N.Y. Mar. 28, 2023) ................................................................... 10, 12

Sims v. Campbell Soup Co.,
2018 WL 7568640 (C.D. Cal. Sept. 24, 2018).......................................................................... 10

*Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) ...................................................... 3

*Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024) ...................... 7

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ............................................................. 13

Plaintiffs John Daly, Perry A. Bruno, and Melissa Furman ("Plaintiffs") respectfully submit this response in opposition to Defendant The Kraft Heinz Company LLC ("Defendant") Motion to Dismiss Plaintiffs' First Amended Complaint.

## I.  INTRODUCTION

Defendant labels its Philadelphia Cheesecake Crumbles products with objectively false claims that they contain "no artificial preservatives" (the "Products"). In direct contradiction to the "no artificial preservatives" label, the Products contain lactic acid which is an artificial chemical preservative. *See* Plaintiff's First Amend. Compl., Dkt. 14, ("FAC") at ¶ 11. Plaintiffs allege reasonable consumers do not expect that products labeled as containing "no artificial preservatives" contain artificial preservatives. FAC ¶ 22. Plaintiffs allege that they, and the class members they seek to represent, were misled by Defendant's "no artificial preservatives" labeling in violation of the Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq.*, Nevada Deceptive Trade Practices Act ("NVDTPA") NRS 598, et seq., False Advertising Law ("FAL") (Cal. Business & Professions Code §§ 17500 *et seq.*, Unfair Competition Law ("UCL") (Cal. Business & Professions Code §§ 17200 *et seq,* Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750 *et seq.*), common law fraud, and unjust enrichment.

Yet, Defendant seeks to dismiss Plaintiffs' claims on the basis that they have failed to state a claim upon which relief may be given. Specifically, Defendant argues that (1) Plaintiffs failed to plausibly allege that lactic acid in the Products is an artificial preservative and (2) that the Court should strike Plaintiff's nationwide class allegations.

Defendant is wrong. Plaintiffs have plead adequate factual allegations to state a claim for relief under the ILCFA, NVDTPA, FAL, UCL, and CLRA and for common law fraud and unjust

1

enrichment. As Plaintiffs explain below, the USDA guidance on lactic acid must be disregarded as it is contrary to the plain language of the Organic Foods Production Act of 1990; this Honorable Court should determine that the lactic acid in the Products is artificial as a matter of law; Plaintiffs adequately alleged lactic acid is a preservative;, and Defendant's attempt to dismiss Plaintiffs' nationwide claims is premature.

## II.     FACTUAL BACKGROUND

This case is brought on behalf of purchasers of the Products in the United States between May 21, 2020, and the present. FAC ¶ 46. Plaintiffs also bring four subclasses of all persons who purchased the Products in Illinois, California, and Nevada. *Id.* at ¶ 47-50. Plaintiffs allege that at least four Products are mislabeled as having "no artificial preservatives" because they contain lactic acid. *Id.* at ¶ 11, 24. The lactic acid in Defendant's Products is artificially created and functions to retard the deterioration of the Products. *Id* at ¶ 14.

Specifically, Plaintiffs allege that the lactic acid in Defendant's Products is subject to two synthetic reactions that chemically change the lactic acid produced by fermenting bacteria, such that the lactic acid in the Products is not the lactic acid actually produced by bacteria. FAC ℙ 14. Instead, lactic acid produced from fermenting bacteria is first synthesized into calcium lactate by reacting lactic acid in the fermentation liquor with calcium carbonate. *Id.* This first synthetic reaction chemically changes the lactic acid into calcium lactate. *Id.* Calcium lactate is not lactic acid, it is a different chemical. *Id.* Then calcium lactate is reacted with sulfuric acid to create lactic acid and calcium sulfate. *Id.* It is the lactic acid created from a reaction between calcium lactate and sulfuric acid that is actually in the Products. *Id.*

Plaintiffs allege Defendant's mislabeling constitutes violations of the Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq.*, Nevada

2

Deceptive Trade Practices Act ("NVDTPA") NRS 598, et seq., False Advertising Law ("FAL") (Cal. Business & Professions Code §§ 17500 *et seq.*, Unfair Competition Law ("UCL") (Cal. Business & Professions Code §§ 17200 *et seq,* Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750 *et seq.*), common law fraud, and unjust enrichment.

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). A court must draw all reasonable factual inferences in the plaintiff's favor. *Bell Atlantic*, 550 U.S. at 555–56. "[A] court must take the allegations as true, no matter how skeptical the court may be." *Ashcroft*, 556 U.S. at 696. "A complaint need not 'allege all, or any, of the facts logically entailed by the claim,' and it certainly need not include evidence." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008), citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). "Litigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's proof leads to windy complaints and defeats the function of Rule 8." *Bennett*, 153 F.3d at 519. "A plaintiff's complaint need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo*, 526 F.3d at 1081. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…" *Id*.

## IV.   ARGUMENT

### A.   DEFENDANT'S FACTUAL ARGUMENTS ARE INAPPROPRIATE ON A MOTION TO DISMISS

Plaintiffs plausibly alleged factual content that allows the Court to draw the reasonable inference that Defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plaintiffs allege the lactic acid in the Products is a chemically produced artificial

substance that is a preservative. FAC ⁋ 14. Importantly, Defendant does not dispute Plaintiff's allegations as to how the lactic acid was produced. Defendant's Mot. to Dismiss p. 7.

### 1. Plaintiffs Adequately Alleged the Lactic Acid is Artificial.

Plaintiff adequately alleged that the lactic acid is artificial. FAC ⁋ 14. Specifically, Plaintiff alleged that the lactic acid in the Products was subject to a spontaneous synthetic acid-base reaction between calcium carbonate and the lactic acid produced by genetically engineered bacteria. *Id.* That spontaneous synthetic acid-base reaction creates calcium lactate. *Id.* This type of synthetic reaction is known as a neutralization reaction.[1] Calcium lactate is not lactic acid, calcium lactate is a different chemical altogether. Then, as Plaintiff alleged, the calcium lactate is then subject to another synthetic reaction with sulfuric acid to produce lactic acid and calcium sulfate. *Id.* This type of reaction is known as an acidification reaction.[2] In simple terms, lactic acid as it appears in the Products is created through two synthetic reactions that chemically changes the lactic acid produced through fermentation into a different chemical. *Id.* The only dispute between the Parties on this issue is whether the lactic acid is artificial as a matter of law. Defendant's Mot. to Dismiss p. 7.

///

---

[1] "Neutralization," Supp. Modules (Phys. & Theor. Chem.): Acids & Bases: Acid-Base Reactions, Chemistry LibreTexts (Jan. 29, 2023), https://chem.libretexts.org/Bookshelves/Physical_and_Theoretical_Chemistry_Textbook_Maps/ Supplemental_Modules_%28Physical_and_Theoretical_Chemistry%29/Acids_and_Bases/Acid_ Base_Reactions/Neutralization.
[2] 5.3: Acid-Base Reactions," Map: General Chemistry (Petrucci et al.), Chemistry LibreTexts (July 12, 2023), https://chem.libretexts.org/Bookshelves/General_Chemistry/Map%3A_General_Chemistry_%28 Petrucci_et_al.%29/05%3A_Introduction_To_Reactions_In_Aqueous_Solutions/5.3%3A_Acid-Base_Reactions.

**(a) The USDA guidance must be disregarded because it is contrary to The Organic Foods Production Act of 1990.**

"When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244, 2263 (2024). Thus, Courts may no longer to defer to agency interpretations of statutes even where the statute delegates authority to the agency to enact regulations under it. *See Consumer Financial Protection Bureau v. Townstone Financial, Inc.,* 107 F.4th 786 (7th Cir. 2024). Instead, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enterprises*, 144 S. Ct. at 2273. "The term "synthetic" means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes." 7 U.S.C.A. § 6502 (West).

Yet, the United States Department of Agriculture ("USDA") guidance on the use of lactic acid in organic products describes the lactic acid as non-synthetic, where the USDA explicitly states that the lactic acid is neutralized by the addition of calcium carbonate to the fermentation liquor resulting in the formation of calcium lactate, which is later acidified with sulfuric acid to convert calcium lactate into lactic acid with a byproduct of calcium sulfate. RJN Ex. 1, at 3.

In basic terms, lactic acid that is manufactured as described by both Plaintiff and the USDA is inarguably manufactured by a chemical process. RJN Ex 1, at 3; FAC ⁋ 14. Importantly, even though the initial fermentation of bacteria produces lactic acid, that lactic acid is synthesized into calcium lactate. *Id.* In other words, that initially produced lactic acid is not the substance in the

5

Products. Instead, the lactic acid in the Products is produced by the acidification reaction between calcium lactate and sulfuric acid. *Id*. Calcium lactate is not lactic acid, it is a wholly different chemical. In fact, many manufacturers sell calcium lactate created from this process out right.[3] As a result, the lactic acid that is actually the end product of the fermentation method described by Plaintiff and the USDA was not created by a naturally occurring process. RJN Ex 1, at 3; FAC ⁋ 14.

Calcium lactate can be synthesized by a catalytic transformation of glycerol in a calcium hydroxide aqueous solution.[4] Hypothetically, a manufacturer could produce lactic acid by reacting calcium lactate, created from glycerol synthesis, with sulfuric acid and the result would be the same as the fermentation method—lactic acid and calcium sulfate—and would involve literally the exact same synthetic reaction used in the purification process described by the USDA and Plaintiff.[5] Such a hypothetical manufacturing process would be inarguably synthetic under 7 U.S.C.A. § 6502 as the lactic acid would be created by a chemical process. Here, the lactic acid is created by the exact same chemical process, the acidification reaction between calcium lactate and sulfuric acid. RJN Ex 1, at 3; FAC ⁋ 14. Therefore, the USDA determination that lactic acid produced through these means is non-synthetic is explicitly contradictory to the plain language of 7 U.S.C.A. § 6502(22).

///

---

[3] Ke Xu and Ping Xu, "Efficient calcium lactate production by fermentation coupled with crystallization-based in situ product removal," Bioresource Technology (2014)

[4] Catalytic Transform of Glycerol to Calcium Lactate in …," Sci. Dir. (2025), https://www.sciencedirect.com/science/article/abs/pii/S0961953425004751.

[5] This method is not used commercially as it is not economically feasible, but that is not relevant to this analysis.

**(b) This Court should determine that the Lactic Acid in Defendant's Product is Artificial as a matter of law.**

Justice Roberts repeatedly emphasized that interpreting the law is a "solemn duty of the judiciary." *Loper Bright Enterprises*, 144 S.Ct. at 2257 (internal quotations omitted). And while a court may "seek aid from the interpretations of those responsible for implementing particular statutes," it may not shirk its duty to independently interpret the statute. *Id.* at 2262–63. At the motion to dismiss stage a court may make determinations as a matter of law where the underlying factual allegations of a claim are not in dispute. See *Harris v. U.S. Bank,* No. 16-CV-1204-DRH-SCW, 2017 WL 4157361, at *3 (S.D. Ill. Sept. 19, 2017) (where a district court made several determinations as a matter of law regarding a plaintiff's allegations and causes of action). "The term "synthetic" means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes." 7 U.S.C.A. § 6502 (22).

Here, the fermentation method described by both the USDA and Plaintiff involves two synthetic reactions, specifically a neutralization reaction and an acidification reaction. RJN Ex 1, at 3; FAC ¶ 14. While the fermentation of bacteria produces lactic acid, that lactic acid is synthesized into calcium lactate—a wholly different chemical. *Id*. Then, that calcium lactate is synthesized into lactic acid and calcium sulfate. *Id*. The lactic acid synthesized from the calcium lactate is the substance that is ultimately produced and sold as an ingredient. *Id*. Simply stated, the lactic acid in the Product was not created by a naturally occurring biological process, it was created by a chemical process between calcium lactate and sulfuric acid. While this case is not about the Products being labeled as organic, court have previously used organic labeling standards to

7

determine whether a product is mislabeled outside of that context. See *In re Gen. Mills Glyphosate Litig.,* 2017 WL 2983877 (D. Minn. July 12, 2017) ("'Made with 100% Natural Whole Grain Oats' cannot plausibly be interpreted to be more restrictive with regard to synthetic residue than the standard for labelling a product as 'organic' under federal law.") Furthermore, *Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024) is not dispositive or informative for the case at bar because the allegations of the Plaintiffs are fundamentally different. The plaintiffs in *Valencia* alleged that citric acid is artificial because it is fermented from mold and is extracted using chemical solvents. See *Valencia* No. 23-CV-1399 (CS), 2024 WL 1158476, at *6. "A reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it, <u>if the way it is produced is that it is derived from a natural product and does not contain anything synthetic</u>." *Id.* (emphasis added).

Here, Plaintiff explicitly alleged that manufactured lactic acid is synthetic because it was produced through a synthetic reaction that converts calcium lactate into lactic acid and calcium sulfate. Applying the first prong in 7 U.S.C.A. § 6502 (22) defining the term 'synthetic' as substances "manufactured by a chemical process" to the lactic acid in this case leads to the conclusion that the lactic acid is synthetic. *See Supra*. Additionally, the exception in § 6502(22) that the term 'synthetic' does not apply to substance created by natural biological processes, cannot be determined to apply to lactic acid in this case because it would completely nullify the second prong of the definition provided by § 6502(22). The second prong of § 6502(22), that 'synthetic' means a chemical manufactured "by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources" would be rendered meaningless if the term

'synthetic' did not apply to the end-product ingredients because reactants[6] were originally created by a biological process. See 7 U.S.C.A. § 6502(22). Instead, applying the exception only if the process by which the end product ingredient was produced was a naturally occurring process works for both the first prong and the second prong of the definition.[7] Therefore, Plaintiff urges this Honorable Court to conclude that the lactic acid is artificial as a matter of law.

### 2. Plaintiffs Adequately Alleged the Lactic Acid is a Preservative.

Next, Defendant argues Plaintiffs failed to show that lactic acid functions as a preservative in the Products. Defendant's Mot. to Dismiss at 9. As a threshold observation, function of an ingredient in a product is not determinative of the effects of an ingredient on consumers after they consume it. If a hypothetical product was labeled, "No Poisons", but actually contained strychnine, commonly known as rat poison, the "No Poisons" label would not be accurate simply because strychnine can be used as a stimulant. Even if the strychnine truly functioned as a stimulant in the hypothetical product, it would still be a poison, because it is categorically a poison. Similarly, consumers who seek products that do not contain poison, seek to avoid the consumption of poisons irrespective of what the poison's other functions might be.

Defendant's argument does not align with a plain reading of the FDA's chemical preservative regulations, is scientifically inaccurate, and asserts issues of fact regarding reasonable consumers' understanding of the term "no artificial preservatives." The FDA defines chemical preservative as: "any chemical that, when added to food, **tends to** prevent or retard deterioration

---

[6] In chemistry the term "reactant" describes a substances or substances used at the start of a reaction to create a new chemical referred to as a "product" which is the substance resulting from the reaction.

[7] For example, if lactic acid were created by fermentation, and then purified from the fermentation liquor by an enzyme extracted from a plant or animal (instead of by neutralization and acidification), that version of lactic acid would not be synthetic because the chemical process was a naturally occurring biological process.

thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22 (emphasis added). The term "tend" is defined in common parlance as to be likely to behave in a particular way or have a particular characteristic.[8] 21 C.F.R. § 101.22 does not define chemical preservatives based on the intended function of those chemicals, rather it defines chemical preservatives based on the likelihood that those chemicals will display characteristics that retard the deterioration of food. *See* 21 C.F.R. § 101.22. Therefore, Defendant's assertion that Plaintiffs must "establish" that the lactic acid specifically functions as preservatives in the Products is incorrect.

Lactic acid tends to extend the shelf-life of the Products by creating an environment inhospitable to bacteria growth. FAC ⁋ 15. Plaintiffs explicitly alleged that lactic acid is used to balance PH of products and to inhibit microbial growth, both of which are aspects of food preservation. *Id*. The chemical properties of lactic acid dictate that it has a bacterio-static effects on its environment and changes the PH of its environment, as a result lactic acid is categorically a chemical preservatives in the Products because it **tends to** retard the deterioration of food. *Id*; *See also* 21 C.F.R. § 101.22. Beyond that, Plaintiff explicitly alleged that lactic acid functions as a preservative explicitly in cheese products, and Defendant's Product is a cheesecake dessert. FAC ⁋ 15. *See Hayes v. Kraft Heinz Co.,* No. 1:23-CV-16596, 2024 WL 4766319, at *4 (N.D. Ill. Nov. 13, 2024) (where allegations that ingredients in a macaroni and cheese product were commonly used as a preservatives in cheese were held to be "enough to withstand a motion to dismiss.").

---

[8]     Cambridge     Dictionary,     Definition     of     Tend, https://dictionary.cambridge.org/us/dictionary/english/tend

Furthermore, this Court should follow the several courts holding that the function of an ingredient in a food product presents a question of fact that cannot be decided on a motion to dismiss. *See*, *e.g.*, *Simeone v. T. Marzetti Co.*, 2023 WL 2665444, at *6 (S.D.N.Y. Mar. 28, 2023) (denying motion to dismiss where the plaintiff alleged citric acid functions as a preservative); *Quiroz v. Beaverton Foods, Inc.*, 2019 WL 1473088, at *8 (E.D.N.Y. Mar. 31, 2019) (same); *Kubilius v. Barilla Am.*, Inc., 2019 WL 2861886, at * 4 (N.D. Ill. July 2, 2019) (rejecting the defendant's argument that the plaintiff "was required to plead facts indicating that citric acid 'functions as a preservative' in the defendant's product, i.e., a jar of pasta sauce); *Branca v. Bai Brands*, *LLC*, 2019 WL 1082562, at * 4-5 (S.D. Cal. Mar. 7, 2019) (holding that the Court could not make a factual determination as to the function of malic acid in the product at the pleadings stage); *Morris v. Mott's LLP*, 2019 WL 948750, at * 4 (C.D. Cal. Feb. 26, 2019) (holding that the defendant's argument "that the malic acid in its snacks functions exclusively as pH control agent and not as a flavor ... [was] inappropriate for determination on a motion to dismiss." (quotations and citation omitted)); *Sims v. Campbell Soup Co.*, 2018 WL 7568640, at * 5 (C.D. Cal. Sept. 24, 2018) ("Defendants' arguments that malic acid is not, or does not function as, a flavor go to disputed factual questions that the Court cannot resolve at the motion to dismiss stage."); *Ivie v. Kraft Foods Global, Inc.*, 2013 WL 685372, at * 10 (N.D. Cal. Feb. 25, 2013) ("[T]he factual determinations of whether maltodextrin is used as a sweetener and/or sodium citrate is used as a flavoring agent in this particular product, and whether a reasonable consumer would have thus been misled by the 'no artificial sweeteners or preservatives' label, are inappropriate for determination on a motion to dismiss."); *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at * 8 (E.D.N.Y. Sept. 14, 2015) (holding whether phosphoric acid functioned as a preservative in

11

the product "is a question of fact that cannot be decided as a matter of law at th[e] [pleadings] stage of the case.").

Finally, Defendant's function argument is based on an underlying assertion of fact regarding reasonable consumers interpretation of "no artificial preservatives," specifically that reasonable consumers would be satisfied eating a chemical that has preservative chemical properties, because they were included in the Products for another reason, like taste. Consumer interpretation of product labeling is an issue of fact inappropriate at this stage. *Bell v. Publix Super Markets, Inc.* is controlling on this point. 982 F.3d 468, 478 (7th Cir. 2020). In *Bell*, the plaintiff challenged the label "100% grated parmesan cheese" as deceptive where the ingredients label stated the product contained other ingredients. *Bell*, 982 F.3d at 468-469. The trial court dismissed the claims on the basis that a reasonable consumer, using common sense, would scrutinize the packaging to determine that the product contained more than just cheese, such that "100% grated parmesan cheese" reasonably meant the cheese was "100% grated" not "100% cheese." *Id*. On appeal, the Seventh Circuit reversed holding that, "what matters most is how real consumers understand and react to the advertising… [c]onsumer protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." Id. at 478. Consumer protection statutes do not impose a duty on reasonable consumers to parse the language of "no artificial preservatives" to determine if Defendant actually meant "this product does not contain artificial chemicals that prevent food from spoiling" or "this product contains artificial preservatives, but we are using them because they taste good".

Furthermore, Defendant's reliance on Hu and Ivie are flawed. In *Hu*, the Court engaged in a parsing of labeling language directly in opposition to the reasoning of *Bell*. *See Hu v. Herr*

12

*Foods*, Inc., 251 F. Supp. 3d 813, 821 (E.D. Pa. 2017). Additionally, the plaintiffs in Hu failed to plead a factual basis for the challenged ingredients to function as preservatives in the challenged products. *See id.* Meanwhile, Plaintiffs here plead a factual basis regarding how the lactic acid functions as a preservative specifically in cheese. FAC ⁋ 15. For these reasons, Courts have declined to follow Hu. *See Simeone v. T. Marzetti Co.*, 2023 WL 2665444, at \*6 (S.D.N.Y. Mar. 28, 2023) ("Defendant's citation to *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017) is unavailing because the plaintiff there failed to explicitly allege that citric acid acted as a preservative in the product at issue, id. at 821–822; Plaintiffs here have explicitly alleged that '[c]itric acid stabilizes the active ingredients in the Products and thus is a preservative'… Plaintiffs' allegations are sufficient at this stage to state a claim that citric acid works as a preservative in the Products."); *Cabrega v. Campbell Soup Co.*, 2019 WL 13215191, at \*10 (E.D.N.Y. Nov. 18, 2019) ("[U]nlike the complaint in Hu I, the FAC plausibly alleges that the ingredients at issue, i.e., citric acid and ascorbic acid, actually function as a preservative in the Products. Again, plaintiffs need not plead specific evidence or extra facts to further 'substantiate that assertion,' on a Rule 12(b)(6) motion to dismiss."); *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 298 (S.D.N.Y. 2022) ("The *Hu* court's reasoning is unpersuasive. In reaching its decision, the district court noted that plaintiff had not supported her definition of preservative; however, as discussed, Plaintiff's definition of "preservative" is supported by the common definition of that term.").

In the *Ivie* case, there was no indication in the FDA regulations, or any other source provided to the Court that the challenged ingredients in Ivie, potassium citrate and sodium citrate, were flavors. *Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1041–42 (N.D. Cal. 2013) ("A bare, conclusory assertion that these [potassium citrate and sodium citrate]… 'simulate[ ],

resemble[ ], or reinforce[ ] the characterizing [lemon] flavor,' without any basis for such a conclusion in the FDA regulations or otherwise, is insufficient to state a claim that these labels violate 21 C.F.R. § 101.22(i)(2).''). In the case at bar, Plaintiffs provided a source that explains that lactic acid is commonly used as a preservative in cheese, and Defendant's Products are cheesecake desserts. Plaintiff's First Amend. Compl. ¶ 15.

**B.  DEFENDANT'S ATTEMPT TO DISMISS NATIONWIDE CLAIMS IS PREMATURE AND IMPROPER.**

Defendant's argument in support of striking Plaintiffs' claims on behalf of nationwide consumers should be denied, as it prematurely seeks to resolve disputed factual issues about whether a nationwide class may be certified. In rejecting premature efforts to dismiss class allegations, courts have repeatedly recognized that where, as here, the factual issues critical to class certification are disputed, a court may not resolve the merits of plaintiffs' request for certification without the benefit of a developed record.[9]

Since the Supreme Court issued *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) courts have repeatedly denied premature requests to dismiss class allegations, recognizing

---

[9] *See generally* 7AA Wright, Miller & Kane, Federal Practice and Procedure § 1785.3 ("As a practical matter, the court's [certification] determination usually should be predicated on more than the complaint itself affords.") *See I.B. v. Facebook, Inc.*, 2012 U.S. Dist. LEXIS 154327 (N.D. Cal. Oct. 25, 2012) (denying as premature a motion to strike class allegations based on Facebook's argument that allegations presented highly individualized facts); *Clerkin v. MyLife.com, Inc.*, 2011 U.S. Dist. LEXIS 96735 (N.D. Cal. Aug. 29, 2011) ("Rule 12(b)(6) is not the appropriate procedural vehicle to challenge class allegations. Accordingly, Defendants' Rule 12(b)(6) motion concerning Plaintiffs' class allegations is denied."); *Cholakyan*, 796 F. Supp. 2d at 1245-46 (rejecting motion to dismiss class allegations in advance of a motion for class certification as class allegations are disputed and require ample discovery); *Hibbs-Rines v. Seagate Techs., LLC*, No. C08-0540, 2009 U.S. Dist. LEXIS 19283, at *7-8 (N.D. Cal. Mar. 2, 2009) ("Discovery is integral to developing the shape and form of a class action and granting of motions to dismiss class allegations before discovery has commenced is rare'") (internal quotations and citations omitted); *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235-36 (S.D. Cal. 2009) (denying motion to strike class allegations).

14

discovery is necessary to evaluate class claims. *See, e.g.*, *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2011 U.S. Dist. LEXIS 147489, at *17-18 (N.D. Cal. Dec. 22, 2011) (denying defendants' motion to dismiss class claims as premature); *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2012 U.S. Dist. LEXIS 12961, at *13-14 (S.D.N.Y. Jan. 19, 2012) (denying motion to strike class allegations as premature in Title VII gender discrimination action); *Connelly v. Hilton Grand Vacations Co.*, 2012 U.S. Dist. LEXIS 81332, *7 (S.D. Cal. June 11, 2012) ("To the extent that Hilton seeks to 'resolve class claims at the pleading stage, … however, its motion is improperly brought pursuant to Federal Rule of Civil Procedure 12(b)(6)."); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1798 (3d ed. 2005) ("Compliance with Rule 23  prerequisites theoretically should not be tested by a motion to dismiss for failure to state a claim or by a summary-judgment motion.") (Emphasis added).

Defendant seeks to prejudice Plaintiffs by denying them class discovery necessary for a properly supported motion for class certification, a motion that requires Plaintiffs to put forward evidence that the prerequisites of Rule 23 are met. Cognizant of this burden, Defendant unfairly attempts to shift its burden to Plaintiffs prior to Plaintiffs' filing of a motion for class certification, thereby precluding the introduction of extrinsic evidence necessary to satisfy the prerequisites of Rule 23(a) and (b). For these reasons, the Court should decline to dismiss class allegations prior to a motion for class certification. *See supra*.

## V.    CONCLUSION

For the reasons explained above, Plaintiffs respectfully requests the Court deny Kraft's Motion to Dismiss Plaintiffs' Consolidated Complaint. In the alternative, Plaintiffs request the Court grant leave to file a First Amended Consolidated Complaint to correct any deficiencies in their Consolidated Complaint. *See Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004).

15

Respectfully submitted,

By: /s/ Steven G. Perry
Attorney for Plaintiff
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
707 Skokie Blvd., Suite 600
Northbrook, Illinois 60062
Phone: (224) 218-0875
Steven.perry@toddflaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 24, 2025, a copy of the foregoing Response to Defendants' Motion to Dismiss Plaintiffs' Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Steven G. Perry
Attorney for Plaintiff