**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JOHN DALY, PERRY A. BRUNO, and MELISSA FURMAN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KRAFT HEINZ FOODS COMPANY, LLC, <br><br> Defendant. | Case No. 1:25-cv-7185 <br><br> The Honorable Franklin U. Valderrama |

**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**
**OR STRIKE NATIONWIDE CLASS ALLEGATIONS**

**JENNER & BLOCK LLP**

Dean N. Panos
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendant
Kraft Heinz Foods Company
(incorrectly named as "Kraft Heinz Foods
Company, LLC")

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ARGUMENT ....................................................................................................................3

I.      Plaintiffs Have Not Plausibly Alleged That Reasonable Consumers Regard the
        Lactic Acid in Philadelphia Cheesecake Crumbles as "Artificial."...................................3

        A.      The USDA's view that the lactic acid in the products is "nonsynthetic"
                accords with the text of the OFPA and reflects the USDA's expertise. ..................4

        B.      Plaintiffs have not plausibly alleged that *reasonable consumers* view the
                lactic acid as "artificial," regardless of whether the USDA is right or wrong.........6

II.     Plaintiffs Have Not Plausibly Alleged That the Lactic Acid Acts as a "Preservative." ......8

III.    The Court Should Strike Plaintiffs' Nationwide Class Allegations...................................12

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All One God Faith, Inc. v. Hain Celestial Grp., Inc.*,
2009 WL 4907433 (N.D. Cal. Dec. 14, 2009) ..............................................................6

*Astiana v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) ...............................................................................3, 6

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) ..................................................................................10, 11

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002) ...........................................................................12, 13, 14

*CFPB v. Townstone Financial, Inc.*,
107 F.4th 786 (7th Cir. 2024) ....................................................................................5

*CFTC v. Worth Bullion Grp., Inc.*,
717 F.3d 545 (7th Cir. 2013) .....................................................................................9

*Chen-Oster v. Goldman, Sachs & Co.*,
2012 WL 205875 (S.D.N.Y. Jan. 19, 2012) .............................................................14

*Chen-Oster v. Goldman, Sachs & Co.*,
877 F. Supp. 2d 113 (S.D.N.Y. 2012)......................................................................14

*Cholakyan v. Mercedes-Benz USA, LLC.*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011) ...................................................................14

*Clay v. Am. Tobacco Co.*,
188 F.R.D. 483 (S.D. Ill. 1999) ................................................................................12

*Connelly v. Hilton Grand Vacations Co.*,
2012 WL 2129364 (S.D. Cal. June 11, 2012)..........................................................14

*Covillo v. Specialtys Café*,
2011 WL 6748514 (N.D. Cal. Dec. 22, 2011)..........................................................14

*Cowen v. Lenny & Larry's, Inc.*,
2017 WL 4572201 (N.D. Ill. Oct. 12, 2017)........................................................13, 14

*Daly v. Glanbia Performance Nutrition, Inc.*,
2023 WL 5647232 (N.D. Ill. Aug. 31, 2023) .......................................................12, 13, 14

*DeMaso v. Walmart Inc.*,
    655 F. Supp. 3d 696 (N.D. Ill. 2023) ...................................................................10

*I.B ex rel. Fife v. Facebook, Inc.*,
    905 F. Supp. 2d 989 (N.D. Cal. 2012) .................................................................14

*Fullerton v. Corelle Brands, LLC*,
    2019 WL 4750039 (N.D. Ill. Sept. 30, 2019) ...............................................13, 14

*In re Gen. Mills Glyphosate Litig.*,
    2017 WL 2983877 (D. Minn. July 12, 2017) ......................................................3, 6

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)..............................................................................................13

*Harris v. Rust-Oleum Corp.*,
    2022 WL 952743 (N.D. Ill. Mar. 30, 2022)......................................................13, 14

*Hibbs-Rines v. Seagate Techs., LLC*,
    2009 WL 513496 (N.D. Cal. Mar. 2, 2009)..........................................................14

*Hill v. Wells Fargo Bank, N.A.*,
    946 F. Supp. 2d 817 (N.D. Ill. 2013) ...............................................................13, 14

*Hu v. Herr Foods, Inc.*,
    251 F. Supp. 3d 813 (E.D. Pa. 2017) ..............................................................10, 11

*Ivie v. Kraft Foods Global, Inc.*,
    961 F. Supp. 2d 1033 (N.D. Cal. 2013) ...........................................................10, 11

*Kubilius v. Barilla Am., Inc.*,
    2019 WL 2861886 (N.D. Ill. July 2, 2019)...........................................................15

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ................................................................................8

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024)......................................................................................1, 3, 5

*Lyons v. Coxcom, Inc.*,
    718 F. Supp. 2d 1232 (S.D. Cal. 2009)................................................................14

*Matthews v. Polar Corp.*,
    2023 WL 4534543 (N.D. Ill. Mar. 22, 2023).........................................................10

*Michigan v. EPA*,
    576 U.S. 743 (2015)................................................................................................5

iii

*Miller v. Gen. Motors Corp.*,
2003 WL 168626 (N.D. Ill. Jan. 26, 2003) ...........................................................................12

*Partlo v. Johanns*,
2006 WL 1663380 (D.D.C. June 11, 2006) ..............................................................................5

*Pelayo v. Nestle USA, Inc.*,
989 F. Supp. 2d 973 (C.D. Cal. 2013) .................................................................................3, 6

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)...............................................................................................................5

*Smith v. Gen. Mills Sales, Inc.*,
2023 WL 2349908 (N.D. Ill. Mar. 3, 2023).........................................................................10

*Valencia v. Snapple Beverage Corp.*,
2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024) .....................................................................7, 8

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..........................................................................................................13, 14

*Zahora v. Orgain LLC*,
2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) ...........................................................................10

**Statutes**

7 U.S.C. § 6502...........................................................................................................................4

7 U.S.C.§ 6517.........................................................................................................................4, 6

**Other Authorities**

21 C.F.R. § 101.22 .................................................................................................................8, 9

Fed. R. Civ. P. 12 .......................................................................................................................14

Fed. R. Civ. P. 23 .......................................................................................................................14

**INTRODUCTION**

The crux of Plaintiffs' lawsuit is that it is deceptive to label Philadelphia Cheesecake Crumbles with the phrase "No Artificial Preservatives" because the products contain lactic acid, which Plaintiffs characterize as a "chemical preservative." FAC ¶ 17.[1] But while Plaintiffs allege that lactic acid manufactured through the use of "genetically engineered bacterial fermentation and acid base synthesis" is "artificial" (*id.* ¶ 14), the USDA regards lactic acid manufactured in this way as "nonsynthetic" and permits its use in organic foods. RJN Ex. 1. If the USDA does not regard lactic acid manufactured in this manner as "artificial" or "synthetic," it is not remotely plausible that reasonable consumers would regard it as "artificial" or "synthetic" either.

Faced with the reality that the USDA does not regard the lactic acid in Philadelphia Cheesecake Crumbles as "artificial," Plaintiffs argue that this Court should ignore the USDA's views because they purportedly contradict the text of the Organic Foods Production Act ("OFPA"), 7 U.S.C. §§ 6501 *et seq.* Plaintiffs are wrong. The USDA's conclusion that the use of common steps like filtration, heating, and purification does not render lactic acid "synthetic" is entirely consistent with the OFPA—particularly since Plaintiffs do not allege that the resulting lactic acid is chemically distinct from naturally occurring lactic acid. And despite Plaintiffs' insistence to the contrary, the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), does not require this Court to ignore the USDA's determination that lactic acid manufactured in the manner Plaintiffs describe is "nonsynthetic." This Court need not—and should not—give Plaintiffs' armchair chemistry more weight than the USDA's well-reasoned, consistent view that lactic acid produced in the way Plaintiffs allege is not "synthetic."

---

[1] Unless noted, all defined terms (such as "FAC" and "RJN") have the same meaning used in Kraft Heinz's memorandum of law, and all citations and internal quotation marks are omitted.

Moreover, while Plaintiffs ask this Court to "conclude that the lactic acid is artificial as a matter of law" (Opp'n at 9), that request fundamentally misstates the question that this case poses. The question here is whether *reasonable consumers* would believe that the lactic acid in Philadelphia Cheesecake Crumbles is "artificial." Regardless of whether one agrees with the USDA's interpretation of the OFPA, reasonable consumers would not believe that an ingredient that the USDA regards as "nonsynthetic" and permits in organic foods is "artificial." Nor would reasonable consumers regard an ingredient as "artificial" if it is derived from a naturally occurring substance and if it is chemically identical to the naturally occurring version of that ingredient—as the lactic acid in Philadelphia Cheesecake Crumbles indisputably is. Plaintiffs' failure to allege that reasonable consumers would view the lactic acid as "artificial" dooms all of their claims.

Plaintiffs' claims also fail because they have not plausibly alleged that the lactic acid actually functions as a preservative in the product. Although Plaintiffs assert that lactic acid is a "preservative" regardless of the function it performs in a product, that argument is inconsistent with both the FDA regulations and common sense. And even if lactic acid *can* act as a preservative, that is not sufficient to establish that it *does* act as a preservative—which Plaintiffs must plausibly allege to state a claim that the phrase "No Artificial Preservatives" is deceptive.

Absent any plausible allegation that reasonable consumers regard the lactic acid in the product as "artificial," and absent any plausible allegation that it acts as a "preservative," Plaintiffs cannot establish that the phrase "No Artificial Preservatives" is deceptive. And even if Plaintiffs' allegations *were* sufficient to state a claim, which they are not, Plaintiffs have not articulated how this Court could adjudicate their claims for common-law fraud and unjust enrichment, which Plaintiffs seek to assert on behalf of a putative nationwide class. This Court should therefore dismiss Plaintiffs' lawsuit—or, at a minimum, strike Plaintiffs' nationwide class allegations.

**ARGUMENT**

**I.     Plaintiffs Have Not Plausibly Alleged That Reasonable Consumers Regard the Lactic Acid in Philadelphia Cheesecake Crumbles as "Artificial."**

To state a claim that the phrase "No Artificial Preservatives" is likely to mislead reasonable consumers, Plaintiffs must plausibly allege that the lactic acid in the product is "artificial." Plaintiffs claim that the lactic acid in the product is "artificial" because it "is produced through genetically engineered bacterial fermentation and acid base synthesis." FAC ¶ 14. But Plaintiffs do not—and cannot—dispute that this method of manufacturing lactic acid is identical to the method that the USDA has outlined for the production of "nonsynthetic" lactic acid, which the USDA has approved for use in "organic" foods. *See* RJN Ex. 1; MTD at 2–4. And because "consumers . . . often equate 'natural' with 'organic' or hold 'organic' to a higher standard," many courts have agreed that a reasonable consumer would not regard an ingredient as "artificial" if the USDA permits it in organic foods. *Astiana v. Kashi Co.*, 291 F.R.D. 493, 507–08 (S.D. Cal. 2013); *see also, e.g.*, *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 979 (C.D. Cal. 2013) (similar); *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (similar).

Relying primarily on the Supreme Court's decision in *Loper Bright*, Plaintiffs assert that this Court should disregard the USDA's position and find that the lactic acid in the product is "artificial as a matter of law." *See* Opp'n at 5–9. This argument fails even on its own terms: the USDA's conclusion that lactic acid manufactured in the manner Plaintiffs allege is "nonsynthetic" is entirely consistent with the text of the OFPA, and *Loper Bright* does not require this Court to ignore the USDA's well-reasoned guidance. But Plaintiffs also miss the broader point, which is that reasonable consumers would not regard an ingredient like lactic acid as "artificial" if the USDA permits it in organic products—particularly if there is no chemical difference between naturally-occurring lactic acid and what Plaintiffs describe as "artificial" lactic acid.

3

**A.** **The USDA's view that the lactic acid in the products is "nonsynthetic" accords with the text of the OFPA and reflects the USDA's expertise.**

The OFPA defines a "synthetic" substance as one "that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes." 7 U.S.C. § 6502(22). The OFPA expressly delegates to the USDA the authority to "establish a National List of approved and prohibited substances that shall be included in the standards for organic production and handling established under this chapter." *Id.* § 6517(a). Consistent with its statutory authority under the OFPA, the USDA has determined that lactic acid manufactured in the manner Plaintiffs allege is "nonsynthetic" and has permitted its use in organic foods. *See* RJN Ex. 1.

Plaintiffs assert that "lactic acid that is manufactured as described by both Plaintiff [sic] and the USDA is inarguably manufactured by a chemical process," and they claim that "the lactic acid that is actually the end product of the fermentation method described by Plaintiff and the USDA was not created by a naturally occurring process." Opp'n at 5–6. But Plaintiffs do not dispute that the lactic acid used in this process is initially created through bacterial fermentation of naturally occurring carbohydrate sources like corn, barley, and wheat. *See* RJN Ex. 1. Plaintiffs fixate on the fact that the "lactic acid is synthesized into calcium lactate" as an intermediate step in the process. Opp'n at 5. But this is just a byproduct of the use of lime and chalk to keep the pH neutral "[d]uring the fermentation process" before the lactic acid is re-acidified "after fermentation has ended." RJN Ex. 1. What matters is that the process begins with naturally occurring lactic acid and ends with lactic acid, which means there is no "chemical change[]" that transforms the naturally occurring lactic acid into a "synthetic" ingredient. 7 U.S.C. § 6502(22). The USDA's conclusion that lactic acid is not "synthetic" is entirely consistent with the text of the OFPA.

4

Nor are Plaintiffs correct that *Loper Bright* requires this Court to start from scratch in determining whether the lactic acid in the product is "synthetic." In *Loper Bright*, the Supreme Court rejected the proposition that courts must "mechanically afford *binding* deference to agency interpretations" of statutes."[2] *Loper Bright*, 603 U.S. at 399 (emphasis in original). In doing so, the Supreme Court held that courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* at 412. But *Loper Bright* also reaffirmed the longstanding rule "that the 'interpretations and opinions' of the relevant agency, 'made in pursuance of official duty' and 'based upon . . . specialized experience,' 'constitute[d] a body of experience and informed judgment to which courts and litigants [could] properly resort for guidance,' even on legal questions." *Id.* at 388 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944)) (alterations in original). And when a statute "delegates discretionary authority to an agency," as the OFPA does, *Loper Bright* requires courts to consider that statutory delegation while "ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries." *Id.* at 395 (quoting *Michigan v. EPA*, 576 U.S. 743, 750 (2015)).

Here, the USDA—the agency that Congress established to regulate agricultural operations in the United States—indisputably has greater subject matter expertise about whether a particular production method renders an ingredient "synthetic" than Plaintiffs (or their counsel) do. *See Partlo v. Johanns*, 2006 WL 1663380, at *19 (D.D.C. June 11, 2006) (noting that the USDA has

---

[2] Plaintiffs also cite *CFPB v. Townstone Financial, Inc.*, 107 F.4th 786 (7th Cir. 2024) for the proposition that courts "may no longer defer to agency interpretations of statutes even where the statute delegates authority to the agency to enact regulations under it." Opp'n at 5. But that case does not support Plaintiffs' position, as the Seventh Circuit found that the CFPB regulation at issue was "consistent with the [statute]'s text and purpose." 107 F.4th at 771. Here too, the USDA's determination that lactic acid produced in the manner Plaintiffs allege is "nonsynthetic" is entirely consistent with the OFPA's definition of "synthetic," as well as the statute's purpose and its express delegation of authority to the USDA to decide which substances are and are not synthetic.

"clear delegated authority, expertise, and discretion"). Mindful of the USDA's superior technical expertise, Congress deliberately authorized the USDA to decide which substances would be deemed "synthetic" and "nonsynthetic." *See* 7 U.S.C. § 6517(a). Pursuant to its delegated authority, the USDA determined that lactic acid manufactured in the manner Plaintiffs allege is not "synthetic" and distinguished it from lactic acid made through synthetic processes, such as the "hydrolysis of lactonitrile." RJN Ex. 1. In light of the USDA's reasoned conclusion that lactic acid produced as Plaintiffs allege is "nonsynthetic," it would be "inappropriate for this Court to assume the USDA's regulatory role, interpret the NOP's regulatory framework, and impose standards that the USDA itself has refused to impose." *All One God Faith, Inc. v. Hain Celestial Grp., Inc.*, 2009 WL 4907433, at *7 (N.D. Cal. Dec. 14, 2009). This Court should reject Plaintiffs' invitation to second-guess the USDA's view that the lactic acid in the product is not "synthetic."

> **B.      Plaintiffs have not plausibly alleged that *reasonable consumers* view the lactic acid as "artificial," regardless of whether the USDA is right or wrong.**

As explained above, Plaintiffs' argument that the lactic acid in the product is "artificial as a matter of law" is wrong as a matter of statutory interpretation. But Plaintiffs also miss the point. This is not an Administrative Procedure Act lawsuit challenging the USDA's finding that lactic acid manufactured in the manner Plaintiffs allege is "nonsynthetic." Rather, this is a state-law product mislabeling case in which Plaintiffs allege that the phrase "No Artificial Preservatives" is likely to mislead reasonable consumers. Whether the USDA's determination that the lactic acid in the product is "nonsynthetic" reflects the best reading of the OFPA is beside the point. What matters is that the USDA's determination that the lactic acid is "nonsynthetic" suggests that reasonable consumers would not regard the lactic acid in the product as "artificial." *See Astiana*, 291 F.R.D. at 507–08; *Pelayo*, 989 F. Supp. 2d at 979; *General Mills*, 2017 WL 2983877, at *6.

Put differently, if USDA scientists with specialized, relevant expertise believe that the lactic acid in the products is "nonsynthetic," it would be unreasonable for lay consumers to believe otherwise.

Even if this Court were to credit Plaintiffs' allegation that the lactic acid in Philadelphia Cheesecake Crumbles was manufactured using a synthetic *process*, that would not mean that a "reasonable consumer acting reasonably would regard as unnatural" *ingredients* produced using that allegedly "synthetic" process. *Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476, at *6 (S.D.N.Y. Mar. 18, 2024). There, as here, the plaintiff alleged that an ingredient in the defendant's product (citric acid) was "artificial" because it was "recovered through numerous chemical reactions with synthetic mineral salts and reagents," which allegedly resulted in "an industrially produced, synthetic ingredient. *Id.* at *5. But the court found that this was insufficient to establish that the citric acid was "artificial," particularly because the plaintiff did not articulate any way "in which the citric acid derived from *Aspergillus niger* differs chemically from the citric acid derived from citrus fruits." *Id.* at *6. As the court explained, "[a] reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it, if the way it is produced is that it is derived from a natural product and does not contain anything synthetic." *Id.* That reasoning applies with equal force here.

Plaintiffs assert that this case is "fundamentally different" than *Valencia* because they allege that the lactic acid was "produced through a synthetic reaction that converts calcium lactate into lactic acid and calcium sulfate." Opp'n at 8. But Plaintiffs do not dispute that the initial step of producing lactic acid is bacterial fermentation, which is an indisputably "natural" process." And Plaintiffs do not—and cannot—allege that there is any chemical distinction between lactic acid produced exclusively through bacterial fermentation and lactic acid produced in the manner they allege. Instead, like the plaintiff in *Valencia*, Plaintiffs claim that the lactic acid is "artificial"

7

because the intermediate steps of the manufacturing process involve "numerous chemical reactions with synthetic mineral salts and reagents." 2024 WL 1158476, at *5.

More importantly, Plaintiffs do not explain why the intricacies of the manufacturing process would lead a reasonable consumer to regard the resulting lactic acid as "artificial"— particularly where the USDA regards lactic acid produced in this manner as "nonsynthetic." Again, the relevant question is not whether an "exceptionally acute and sophisticated" consumer might care whether the lactic acid is subject to "acid-base reactions" as part of the manufacturing process. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 509–10 (2003). The relevant question is whether a reasonable consumer would regard lactic acid produced in a manner that the USDA has approved for use in organic foods as "artificial." Absent any plausible allegation that reasonable consumers would do so, Plaintiffs cannot establish that the labeling is deceptive.

## II. Plaintiffs Have Not Plausibly Alleged That the Lactic Acid Acts as a "Preservative."

Leaving aside their failure to allege facts that make it plausible that the lactic acid in the product is "artificial" or that reasonable consumers regard it as "artificial," Plaintiffs have also not plausibly alleged that it functions as a "preservative." As a result, Plaintiffs have not plausibly alleged that the phrase "No Artificial *Preservatives*" is false or misleading.

Plaintiffs do not dispute that lactic acid "carries out a wide range of functions" in food, including by acting as a "flavor enhancer" or as a "flavoring agent and adjuvant." RJN Ex. 1, at 4–5 (noting that lactic acid "produces a mild and pleasant taste in acid pickles, relishes, and salad dressings" and that it "improves the taste and flavor of many beverages"). It is irrelevant that lactic acid "creat[es] an environment inhospitable to bacteria growth" or that its "chemical properties" suggest that it has "bacterio-static effects." Opp'n at 10. Even if lactic acid *can* act as a "preservative" (*i.e.*, a substance that "prevent[s] or retard[s] deterioration" of food, 21 C.F.R. § 101.22(a)(5)), that does not mean that it *actually* functions as a "preservative" in the product.

Because the FDA regulations define a "preservative" as a substance that "tends to prevent or retard deterioration" of food (*id.*), Plaintiffs assert that lactic acid is a preservative—regardless of its intended function—because it "tends to" inhibit bacterial growth. *See* Opp'n at 9–10. But this argument ignores the structure of 21 C.F.R. § 101.22, which defines several categories of ingredients that have specific functions in food. For example, the regulation defines "artificial flavor" as a substance whose "function . . . is to impart flavor." *Id.* § 101.22(a)(1). It similarly defines "spice" as an "aromatic vegetable substance . . . whose significant function in food is seasoning rather than nutritional." *Id.* § 101.22(a)(2); *see also id.* § 101.22(a)(3) (defining "natural flavor" as a substance "whose significant function in food is flavoring rather than nutritional"). Because the FDA defines the ingredients listed in 21 C.F.R. § 101.22(a) based on their "function" in food, it would be incongruous to treat a substance as a "preservative" regardless of the function it actually serves. *See generally CFTC v. Worth Bullion Grp., Inc.*, 717 F.3d 545, 550–51 (7th Cir. 2013) ("Under the principle of *noscitur a sociis*, the fact that several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well.").

Moreover, Plaintiffs outright ignore 21 C.F.R. § 101.22's requirement that a "food to which a chemical preservative[] is added" must "bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative,' 'to retard spoilage,' 'a mold inhibitor,' 'to help protect flavor' or 'to promote color retention.'" 21 C.F.R. § 101.22(j). Kraft Heinz is well aware of this requirement, which is why the labeling of Philadelphia Cheesecake Crumbles specifically describes another ingredient in the product, natamycin, as a "natural mold inhibitor." *See* RJN Ex. 2. In contrast, the ingredient line notes that the product contains lactic acid, but it does not provide a parenthetical description of its function. *See id.* The reason Kraft Heinz does not include a "separate description of [the] function" of lactic

acid is because it does not act as a preservative. Plaintiffs do not even *acknowledge* this argument in their opposition brief, which only underscores that the lactic acid does not act as a preservative.

Relying primarily on *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020), Plaintiffs assert that this Court cannot determine at the pleading stage how reasonable consumers interpret the term "preservative." *See* Opp'n at 12. But *Bell* makes clear that "dismissal on the pleadings may well be justified" if a plaintiff's claim is based on "unreasonable or fanciful interpretation[]" of the defendant's labeling. 982 F.3d at 477; *see also Zahora v. Orgain LLC*, 2021 WL 5140504, at *3 (N.D. Ill. Nov. 4, 2021) ("A court may dismiss an ICFA claim at the pleading stage if the statement at issue is not misleading as a matter of law.").

Consistent with *Bell*, courts in this District routinely dismiss consumer fraud claims based on implausible and unreasonable interpretations of a challenged labeling claim. *See, e.g.*, *DeMaso v. Walmart Inc.*, 655 F. Supp. 3d 696, 702–04 (N.D. Ill. 2023) (dismissing product mislabeling lawsuit challenging "fudge" and "mint" representations); *Smith v. Gen. Mills Sales, Inc.*, 2023 WL 2349908, at *4 (N.D. Ill. Mar. 3, 2023) (dismissing product mislabeling lawsuit challenging "cheese" representations on frozen pizza rolls); *Matthews v. Polar Corp.*, 2023 WL 4534543, at *6–7 (N.D. Ill. Mar. 22, 2023) (dismissing product mislabeling lawsuit challenging "lemon" representations on lemon-flavored sparking water).. Here too, this Court can—and should—reject Plaintiffs' view that reasonable consumers believe that an ingredient is a "preservative" regardless of whether it serves any preservative function in the food.

This Court would not be alone in doing so. Faced with similar lawsuits, other courts have agreed that reasonable consumers would not believe that an "ingredient is a preservative, regardless of whether or not it has a preservative function in that particular product." *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 821 (E.D. Pa. 2017); *see also, e.g.*, *Ivie v. Kraft Foods Global,*

10

*Inc.*, 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013) (holding that the plaintiffs' allegations that the challenged products contained "artificial *ingredients*" did not suffice to establish that "these ingredients are *flavors*, artificial or otherwise"). Plaintiffs assert that the *Hu* court "engaged in a parsing of labeling language directly in opposition to the reasoning of *Bell*." Opp'n at 12. The *Hu* court did no such thing. Instead, it found that a reasonable consumer would not conclude that an ingredient was a "preservative" if it served no preservative function. *See Hu*, 251 F. Supp. 3d at 821–22. That common-sense conclusion does not "impose on average consumers an obligation to question the labels they see and to parse them as lawyers might." *Bell*, 982 F.3d at 476.

Plaintiffs also argue that, in contrast to *Hu* and *Ivie*, they have "plead[ed] a factual basis regarding how the lactic acid functions as a preservative." Opp'n at 13. But Plaintiffs' factual allegations only establish that lactic acid *can* serve as a preservative—not that it *actually* serves as a preservative in Philadelphia Cheesecake Crumbles. Put another way, the problem is not that Plaintiffs' allegations are insufficiently "detailed." Instead, the problem is that these allegations do not support Plaintiffs' conclusion that the lactic acid actually functions as a preservative.

In a last-ditch effort to avoid dismissal, Plaintiffs assert that "[t]his Court should follow the several courts holding that the function of an ingredient in a food product presents a question of fact that cannot be decided on a motion to dismiss." Opp'n at 11 (compiling cases). But Plaintiffs barely attempt to articulate the reasoning of these cases, which have not stopped other courts from dismissing false advertising cases where the plaintiff's factual allegations failed to establish that the challenged ingredient served the function the plaintiff claimed it did. *See Hu*, 251 F. Supp. 3d at 821–23; *Ivie*, 961 F. Supp. 2d at 1042. Because Plaintiffs' complaint is bereft of plausible factual allegations that substantiate their claim that the lactic acid *actually* functions as a

11

preservative in Philadelphia Cheesecake Crumbles and does not serve other functional roles, Plaintiffs have not plausibly alleged that the phrase "No Artificial Preservatives" is deceptive.

### III. The Court Should Strike Plaintiffs' Nationwide Class Allegations.

It is well-settled that class certification is improper unless each class member's claims are "governed by the same legal rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). Here, Plaintiffs do not dispute that each class member's claims for unjust enrichment and common-law fraud "will be governed by the law of the state where [that class member] purchased" Philadelphia Cheesecake Crumbles. *Daly v. Glanbia Performance Nutrition, Inc.*, 2023 WL 5647232, at *3 (N.D. Ill. Aug. 31, 2023) (striking nationwide class allegations). And as many courts have observed, there are material differences between the laws of unjust enrichment and common-law fraud across the fifty states. *See, e.g.*, *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 500 (S.D. Ill. 1999) ("The laws of unjust enrichment vary from state to state."); *Miller v. Gen. Motors Corp.*, 2003 WL 168626, at *2 (N.D. Ill. Jan. 26, 2003) ("No court has held that the fifty states' . . . common laws of fraudulent omission[] are so similar that a single forum state's law could be applied to a multi-state class."); *see also Daly*, 2023 WL 5647232, at *4 (discussing the "material differences among various states' common-law fraud and unjust enrichment laws"). Those material variations make it impossible to adjudicate these claims on a nationwide basis.

Plaintiffs characterize Kraft Heinz's request to strike their class allegations as "premature" and assert that this Court cannot "resolve disputed factual issues about whether a nationwide class may be certified . . . without the benefit of a developed record." Opp'n at 14. But Plaintiffs do not even *attempt* to articulate what "factual issues" this Court must resolve to find that these common-law claims cannot proceed on a nationwide basis or how a "developed record" would inform that inquiry. Similarly, while Plaintiffs cite a litany of out-of-circuit cases suggesting that discovery is necessary to determine whether class certification is appropriate (*see* Opp'n at 14 n.9),

Plaintiffs do not articulate how discovery is necessary to determine whether state-to-state variations in the common law of fraud and unjust enrichment make it unworkable to adjudicate those claims on a nationwide basis. That is a pure issue of law that does not require any discovery.

This issue is therefore "appropriate to decide at the pleading stage because the difficulty in Plaintiffs' claims stem[s] from the variance in the substantive law, which discovery cannot cure." *Fullerton v. Corelle Brands, LLC*, 2019 WL 4750039, at \*15 (N.D. Ill. Sept. 30, 2019) (citing *Bridgestone/Firestone*, 288 F.3d at 1015). *Fullerton* is not an outlier. "[S]everal courts in this District have found class treatment of unjust enrichment claims unsupportable at the pleading stage." *Harris v. Rust-Oleum Corp.*, 2022 WL 952743, at \*5 (N.D. Ill. Mar. 30, 2022) (granting motion to strike nationwide class allegations and compiling cases); *see also, e.g.*, *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201, at \*4 (N.D. Ill. Oct. 12, 2017) ("District courts, both within this district and others, have held that a motion to strike class allegations . . . is an appropriate device to determine whether the case will proceed as a class action.").

That result also accords with the Supreme Court's admonition that a district court can strike class allegations prior to discovery when the defects are "plain enough from the pleadings." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also, e.g.*, *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) (granting motion to strike class allegations and noting that "sometimes the complaint will make it clear that class certification is inappropriate"). Plaintiffs suggest that the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) precludes this Court from striking or dismissing class allegations. *See* Opp'n at 13–14. But because *Dukes* was a Title VII case, it did not address the question of whether variations in *state law* permit courts to strike nationwide class allegations at the pleading stage. And as *Daly*,

13

*Fullerton*, *Harris*, *Cowen*, and *Hill* make plain, courts in this District have continued to strike nationwide class allegations at the pleading stage following *Dukes*.

The cases Plaintiffs cite are inapposite. None of those cases concerned motions to strike class allegations based on material variations in the common law of the fifty states. Instead, they concerned motions to strike based on other grounds—such as lack of Article III standing, the allegedly "individualized" nature of the plaintiffs' alleged injuries, or the plaintiffs' purported inability to serve as class representatives.[3] At most, these cases stand for the proposition that some issues relating to class certification are fact-driven questions that require discovery. They do not hold that a court can never—or should never—strike class allegations at the pleading stage.

The narrow question here is whether this Court can simultaneously adjudicate claims for unjust enrichment and common-law fraud under the laws of all fifty states, despite the "material differences among various states' common-law fraud and unjust enrichment laws." *Daly*, 2023 WL 5647232, at *4. The Seventh Circuit has already decided that the answer to that question is no. *See Bridgestone/Firestone*, 288 F.3d at 1015 ("[W]arranty, fraud, or products-liability suits

---

[3] *See I.B ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1012 (N.D. Cal. 2012) (defendant moved to "strike the class allegations because Plaintiffs lack Article III standing and the class allegations present highly individualized facts"); *Cholakyan v. Mercedes-Benz USA, LLC.*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (defendant moved to strike class allegations "because the putative class is not ascertainable, [plaintiff] is not a typical or adequate class representative, and the class allegations raise multiple individualized issues"); *Hibbs-Rines v. Seagate Techs., LLC*, 2009 WL 513496, at *3 (N.D. Cal. Mar. 2, 2009) (defendant moved to strike class allegations that were "vague and unascertainable"); *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235 (S.D. Cal. 2009) (defendant moved to strike class allegations because "the determination of who would have claims like Plaintiff's would require subscriber-by-subscriber inquiries"); *Covillo v. Specialtys Café*, 2011 WL 6748514, at *6 (N.D. Cal. Dec. 22, 2011) (defendant "argue[d] that the class allegations should be stricken because they fail to satisfy Rule 23 requirements for a class action"); *Chen-Oster v. Goldman, Sachs & Co.*, 2012 WL 205875, at *3–4 (S.D.N.Y. Jan. 19, 2012) (defendant moved to strike class allegations and argued that the plaintiffs could not satisfy Rule 23) *aff'd in part, rev'd in part*, 877 F. Supp. 2d 113 (S.D.N.Y. 2012); *see also Connelly v. Hilton Grand Vacations Co.*, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012) (holding that Rule 12(b)(6) is not an appropriate vehicle to strike class allegations).

may not proceed as nationwide classes."); *see also, e.g.*, *Kubilius v. Barilla Am., Inc.*, 2019 WL 2861886, at \*2 (N.D. Ill. July 2, 2019) (granting motion to strike nationwide class allegations and emphasizing that "actions such as the one plaintiff proposes are disfavored"). Plaintiffs do not articulate any manageable way in which this Court could adjudicate their common-law claims on behalf of a nationwide class. This Court should accordingly strike the nationwide class allegations.

**CONCLUSION**

This Court should dismiss Plaintiffs' lawsuit without further leave to amend.

Dated: October 8, 2025

Respectfully submitted,

By: /s/ Dean N. Panos

Dean N. Panos (ARDC No. 6203600)
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 923-2765
Facsimile: (312) 527-0484
dpanos@jenner.com

Alexander M. Smith
Jenner & Block LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: (213) 239-2262
Facsimile: (213) 239-5199
asmith@jenner.com

Attorneys for Defendants
Kraft Heinz Foods Company
(incorrectly named as "Kraft Heinz
Foods Company, LLC")

15

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed on October 8, 2025 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  October 8, 2025                  By:         /s/ Dean N. Panos

                                               Dean N. Panos

16