**IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| John Daly, Perry A. Bruno, and Melissa Furman individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Kraft Heinz Foods Company, LLC<br><br>Defendant. | No. 25-cv-07185<br>Judge Franklin U. Valderrama |

**ORDER**

Today, more than ever, health-conscious consumers are discerning about the ingredients in the foods they purchase, including snacks. Plaintiffs John Daly, Perry A. Bruno and Melissa Furman (Plaintiffs), individually and on behalf of a putative class, sued Defendant Kraft Heinz Food Company (Kraft), alleging that Kraft falsely and deceptively labels its Philadelphia Cheesecake Crumble dessert products with claims that the products contain no artificial preservatives, when they in fact contain an artificial preservative. Plaintiffs allege common law fraud, unjust enrichment, and violations of the Illinois Consumer Fraud and Deceptive Practices Act (ICFA), the Nevada Deceptive Trade Practices Act, the California False Advertising Act, the California Unfair Business Practices Act, and the California Consumer Legal Remedies Act. R. 14, First Am. Compl. (FAC).[1]

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

Before the Court is Kraft's motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, to strike Plaintiffs' nationwide class allegations; and its request for judicial notice in support of its motion to dismiss. R. 17, Mot. Dismiss; R. 18, Req. Jud. Not. As explained below, the motion to dismiss is denied, the motion to strike Plaintiffs' nationwide class allegations is denied, and the request for judicial notice is granted.

## Background

Kraft advertises, markets, sells, and distributes its cheesecake dessert products throughout the United States. FAC ¶ 10. During the proposed class period Kraft sold all favors of its Philadelphia Cheesecake Crumble products (the Products) labeled, marketed, and advertised as containing "no Artificial Preservatives." *Id.* ¶ 11.









Plaintiffs allege, however, that the Products contain artificial lactic acid. *Id.* The lactic acid is manufactured by Kraft Heinz and produced through a genetically engineered bacterial fermentation and acid base synthesis process. *Id.* ¶¶ 13-14. The lactic acid, when added to foods, tends to prevent or retard deterioration thereof. *Id.* ¶ 16. However, lactic acid is not a common salt, sugar, vinegar, a spice, an oil extracted from spices, a substance added to food by direct exposure thereof to wood smoke, or a chemical applied for its insecticidal or herbicidal properties. *Id.* Based on the manufacturing process and properties of lactic acid, Plaintiffs contend it is a chemical preservative. *Id.* ¶ 17.

According to Plaintiffs, reasonable consumers understand the Products' "No Artificial Preservatives" label to mean that that the product does not contain any artificial preservatives. *Id.* ¶ 22. Plaintiffs allege that the "No Artificial Preservatives" statement on the label is material to reasonable consumers, who

increasingly seek foods bearing "free-from" claims as a way to choose more natural or less processed foods. *Id.* ¶ 23. The inclusion of the "No Artificial Preservatives" statement on the Products' label, from Plaintiffs' perspective, is thus false and misleading with regards to the content. *Id.* ¶ 24. According to Plaintiffs, reasonable consumers do not understand food chemistry well enough to know if ingredients tend to prevent or retard deterioration of food by merely reviewing a product label. *Id.* ¶ 26. On information and belief, Plaintiffs allege Kraft Heinz knew the Products contained an artificial preservative but chose to label the Products with "no artificial preservative" labeling because it did not believe its customers were well educated enough to know the difference. *Id.* ¶ 42.

As a result of the allegedly fraudulent labeling, Plaintiffs claim they have paid a price premium for the Products but instead received non-premium products. *Id.* ¶ 30. The false and misleading claims about the content of the Products also impaired Plaintiffs' ability to choose the type and quality of products they chose to buy. *Id.* ¶ 27. As a result, Plaintiffs have lost money, wasted their time, and experiences stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling. *Id.* ¶ 45.

Plaintiffs, residents of Illinois, Nevada, and California, all purchased Products during the class period. *Id.* ¶¶ 2-4; 18-21. Plaintiffs bring claims against Kraft on behalf of a putative nationwide class and sub-classes from their respective states. *Id.* ¶¶ 54-116. In Count I, Plaintiff Daly alleges on behalf on the Illinois sub-class that Kraft violated the Illinois Consumer Fraud and Deceptive Business Practices Act,

815 ILCS 505/1 *et seq*; in Counts II and III, Plaintiffs allege common law fraud and unjust enrichment on behalf of the nationwide class and all sub-classes; in Count IV Plaintiff Bruno alleges on behalf of the Nevada sub-class that Kraft violated the Nevada Deceptive Trade Practices Act, NRS 598, *et seq*; and in Counts V-VII Plaintiff Furman alleges on behalf of the California sub-class that Kraft violated the California False Advertising Act, Cal. Bus. & Prof. Code § 17500; the California Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200; and the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750.

Before the Court is Kraft's fully briefed motion to dismiss under Fed. R. Civ. P. 12(b)(6).

**Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint. *Hallinan*, 570 F.3d at 820. Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the

assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

**Analysis**

Kraft moves to dismiss Plaintiffs' claims as Plaintiffs have not plausibly alleged that the lactic acid in Philadelphia Cheesecake Crumbles is an "artificial preservative." Kraft further moves to strike Plaintiffs' nationwide class allegations. The Court addresses each in turn.

**I. Request for Judicial Notice**

As an initial matter, Kraft asks the Court, pursuant to Federal Rule of Evidence 201, to take judicial notice of two exhibits. *See* Req. Jud. Not. First, a Technical Evaluation Report prepared by the U.S. Department of Agriculture titled "Lactic Acid, Sodium Lactate, and Potassium Lactate" (USDA Report) which was issued on February 17, 2015 and which is available on the USDA's website. R. 18-1, Ex. 1. Second, photographs of Kraft's Philadelphia Cheesecake Crumbles showing the packaging and label. R. 18-2, Ex. 2.

Recall that Kraft moves to dismiss the complaint pursuant to Rule 12(b)(6). "A motion under 12 (b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The Court "may judicially notice a fact that is not subject to reasonable dispute because it" is either "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined

from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Starting with the USDA Report, Kraft argues the Court can take judicial notice of the report because it is published on a government website. *See* Req. Jud. Not. at 2 (citing *Bartnett v. Abbott Labs.*, 492 F. Supp. 3d 787, 798 n.2 (N.D. Ill. 2020) (citing *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003)); *see also, e.g.*, *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites."); *Koger v. Dart*, 114 F. Supp. 3d 572, 584 n.3 (N.D. Ill. 2015) (noting that the proper subjects of judicial notice "include[] information contained on government websites")). Plaintiffs do not address whether the Court can take judicial notice of the USDA Report but instead urge the Court to disregard it as it is contrary to the Organic Foods Production Act of 1990. *See* Resp. at 4-5. No matter because the Court agrees with Kraft that the report is judicially noticeable. The report "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201 (b)(2), (c)(2); *see also Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of official government documents). To be clear, however, "the Court is not taking judicial notice of the fact that the USDA's standards are appropriate or the best definitions; it takes notice of the existence of the USDA standards themselves." *Wertymer v. Walmart, Inc.*, 2024 WL 2126732, at *2 (N.D. Ill. Feb. 22, 2024).

As for the Products' packaging, the Court can consider the packaging for Kraft's Philadelphia Cheesecake Crumbles—as is both referred to in the Amended

Complaint and central to the Plaintiffs' claims. Indeed, a picture of the packaging is included in the complaint. Accordingly, the Court considers the packaging for the Products in resolving the motion.

The Court, having addressed Kraft's request for judicial notice, now turns to the Rule 12(b)(6) motion to dismiss for failure to state a claim.

## II. 12(b)(6)

In Counts I, IV, V, VI, and VII, Plaintiffs assert claims under various state consumer protection laws. Although they are different, each of these statutes bars relatively similar conduct. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474 (7th Cir. 2020) (surveying state statutes "known as 'Little-FTC Acts' because they are patterned on the Federal Trade Commission Act (FTCA)"). "These statutes all require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers," and "[t]he core prohibitions of these laws are interpreted for the most part interchangeably." *First citing Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (applying California, Illinois, New York, Oregon law), *then citing Bell*, 982 F.3d at 475 (applying California, Illinois, New York law). Consequently, all of these claims have one element in common: the plaintiff must allege that the advertisement misleads a "reasonable consumer." *See e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (addressing California False Advertising Law, the California Legal Remedies Act, and the California Unfair Competition Law); *Bell*, 982 F.3d at 474 ("These statutes 'all require plaintiffs to prove that the relevant labels

are likely to deceive reasonable consumers[.]'").[2]

The reasonable consumer standard "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell*, 982 F.3d at 474-75. A statement must also be read in context. *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1001 (7th Cir. 2018) (applying ICFA) ("An allegedly deceptive act must be viewed 'in light of *all the information* available to plaintiffs.'").

Kraft advances two arguments in support of its motion to dismiss. Kraft argues that (1) Plaintiffs have not plausibly alleged that the lactic acid in the Products is artificial, and (2) Plaintiffs have not plausibly alleged that the lactic acid in the Products *actually* acts as a preservative. *See* Mot. Dismiss. Kraft also moves to strike Plaintiffs' nationwide class allegations. The Court addresses each in turn.

*a. Whether Lactic Acid in Philadelphia Cheesecake Crumbles is Artificial*

Kraft argues the Amended Complaint must be dismissed as Plaintiffs have not plausibly alleged that the lactic acid in Philadelphia Cheesecake Crumbles is "artificial." The packaging for the Products, notes Kraft, does not claim that it is free

---

[2]"When a federal court sits in diversity, the court looks to "the choice-of-law rules of the forum state to determine which state's law applies' to the issues before it." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). "Illinois follows the Restatement (Second) of Conflicts of Laws and uses the 'most significant relationship' test to decide choice-of-law issues." *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008), *aff'd*, 612 F.3d 932 (7th Cir. 2010) (citing *Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 560 (7th Cir. 2006). In the consumer protection context, "where a plaintiff relies on a representation in the same state where that representation was made and received, the law of that state applies." *Id.* (citing RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 148(1) (1971)). Plaintiffs both received and relied on the representation at issue in various states. Thus, the Court must apply the substantive law of multiple states in deciding Plaintiffs' state law claims. However, while the law of multiple jurisdictions applies here, the laws with respect to the "reasonable consumer standard" are substantially similar across states, such that the Court can decide this issue as to all classes. Both Plaintiffs and Kraft refer to the claims as a whole in the motion to dismiss briefing and do not reference specific state statutes. *See* Mot. Dismiss; Resp.; Rep.

of preservatives, only that the product contains "No *Artificial* Preservatives." Mot. Dismiss at 5. For that claim to be false, argues Kraft, Plaintiffs must plausibly allege that the lactic acid in the Products is artificial. *Id*. Plaintiffs retort that whether lactic acid is artificial and whether it functions as a preservative is a question of fact that cannot be decided on a motion to dismiss. Resp. at 10-11. The Court agrees with Plaintiffs.

Plaintiffs allege that the lactic acid in Philadelphia Cheesecake Crumbles is "artificial" because it is "produced through genetically engineered bacterial fermentation and acid base synthesis." *Id.* ¶ 14. Kraft posits that, even accepting Plaintiffs' allegations regarding the manufacturing of lactic acid as true, this still does not support a plausible claim that the lactic acid in Philadelphia Cheesecake Crumbles is "artificial." Mot. Dismiss at 5. This is because the method of producing lactic acid that Plaintiffs outline in their complaint closely parallels the method that the USDA Report permits for manufacturing "nonsynthetic" lactic acid. *Id*. (citing Ex. 1 at 3). The method that the USDA outlines for manufacturing nonsynthetic lactic acid is "the exact method of producing lactic acid that Plaintiffs allege in their complaint." *Id*. at 5-6 (citing FAC ¶ 14). The only difference, from Kraft's point of view, "is that Plaintiffs label the resulting lactic acid as 'artificial.'" *Id*. at 6. If anything, Kraft argues, the fact that Kraft follows the USDA manufacturing process for lactic acid is support that the ingredient is not artificial, as the USDA regards lactic acid produced through this process as "nonsynthetic" and approves it in products labeled "organic." *Id*. (citing Ex. 1). The way Kraft sees it, if the USDA allows

this ingredient in organic foods, "it is not remotely plausible that a reasonable consumer would regard it as an "artificial" ingredient." *Id.* (citing *Astiana v. Kashi Co.*, 291 F.R.D. 493, 507-08 (S.D. Cal. 2013) (noting that "consumers . . . often equate 'natural' with 'organic' or hold 'organic' to a higher standard"); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 979 (C.D. Cal. 2013) (similar); *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (similar)). In support, Kraft cites *Valencia v. Snapple Bev. Corp.*, where the claims were dismissed because plaintiff failed to plausibly allege that the citric acid contained in defendant's products was synthetic. 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024). So too here, asserts Kraft.

Plaintiffs disagree, arguing they have adequately alleged that the lactic acid used in the Products is artificial. Resp. at 4. Specifically, the lactic acid used in the Products was subject to "two synthetic reactions that chemically changes the lactic acid produced through fermentation into a different chemical." *Id.* As to the USDA Report, Plaintiffs argue it must be disregarded as it is contrary to the Organic Foods Production Act of 1990. *Id.* at 5. The Organic Foods Production Act (OFPA) defines "synthetic" as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes." 7 U.S.C.A. § 6502. According to Plaintiffs, the lactic acid manufactured as described by both Plaintiffs and the USDA Report goes through a process and, "[a]s a result, the lactic acid that

is actually the end product of the fermentation method described by Plaintiffs and the USDA was not created by a naturally occurring process." Resp. at 6. The USDA determination that lactic acid produced through these means is non-synthetic is "explicitly contradictory to the plain language of" the OFPA. *Id*. As to *Valencia*, that case, from Plaintiffs' perspective, is not dispositive or informative because the allegations are fundamentally different. *See Valencia,* 2024 WL 1158476. The Court agrees.

In *Valencia*, the court dismissed plaintiff's generalized allegations which had failed to draw a connection between the industrially produced citric acid and the ingredient actually used in defendant's product. *Id*. at *5-6. Here, Plaintiffs allege that Kraft uses manufactured lactic acid in the Products and that the manufactured lactic acid is created through two synthetic processes. *See* FAC ¶¶ 13-14. Perhaps more importantly, Kraft does not dispute that the lactic acid at issue here is created through this process, only that the product created is not artificial or synthetic. *See* Mot. Dismiss at 2-3. The Court, like several other cases addressing similar claims, does not find *Valencia* persuasive. *See Hayes v. Kraft Heinz Co.,* 2024 WL 4766319, at *3 (N.D. Ill. Nov. 13, 2024) (distinguishing *Valencia* and finding that plaintiff had adequately alleged "several respects in which artificial citric acid differs from natural citric acid"); *Fried v. Snapple Bev. Corp.,* 753 F. Supp. 3d 1145, 1152 (S.D. Cal. 2024) (finding *Valencia* unpersuasive where plaintiff alleged that the citric acid in defendant's product was artificial or synthetic and manufactured through an industrial process).

Kraft further argues that Plaintiffs' characterization of the lactic acid as "artificial" is a legal conclusion, not a factual assertion worthy of a presumption of truth. Kraft points to caselaw recognizing that "a bare allegation that an ingredient is "artificial" is insufficient to state a plausible claim." Mot. Dismiss at 6 (citing *Hoffman v. Kraft Heinz Foods Co.*, 2023 WL 1824795, at *8 (S.D.N.Y. Feb. 7, 2023) ("Plaintiff's allegations that the Product contains artificial flavors are conclusory statements that the [c]ourt is not required to accept."); *Svensrud v. Frito-Lay N. Am.*, Inc., 2020 WL 8575056, at *4 (C.D. Cal. Dec. 21, 2020) (granting motion to dismiss where the plaintiff's "conclusory allegations" were "devoid of any facts suggesting the basis for her claim that the Product contains artificial cheddar")). )).

Plaintiffs seemingly agree with Kraft that the characterization of lactic acid in the Amended Complaint is a legal conclusion, as they invite the Court to find that the lactic acid in the Products is artificial as a matter of law. Resp. at 7. In support, Plaintiffs point to the OFPA's definition of "synthetic" and the process used by Kraft, the same process contained in the USDA Report. *Id*. "Simply stated, the lactic acid in the Product was not created by a naturally occurring biological process, it was created by a chemical process between calcium lactate and sulfuric acid." *Id*.

In the reply, Kraft argues that whether the lactic acid is artificial or synthetic as a matter of statutory interpretation misses the point. Rep. at 6. The real question is whether a reasonable consumer would view the lactic acid as artificial, and whether a reasonable consumer would regard ingredients produced using a synthetic process as artificial. *Id*. at 6-7.

The Court finds that Kraft's argument is misplaced on a motion to dismiss. The reasonable consumer standard requires a 'practical and fact-intensive approach to consumer behavior.'" *Jackson v. Dole Packaged Foods, LLC*, 648 F. Supp. 3d 1039, 1046 (S.D. Ill. 2022) (citing *Bell*, 982 F.3d at 478). How a reasonable consumer would interpret a label is thus "typically a question of fact that should not be decided on the pleadings." *Id*. Here, Plaintiffs have plausibly alleged that lactic acid is "artificial" for purposes of the motion to dismiss inquiry and that a reasonable person would be misled by the statement "no artificial preservatives" if lactic acid is artificial when created through a manufactured process. Plaintiffs have alleged, and Kraft agrees, that the lactic acid contained in the Products is produced through a manufactured process that includes two synthetic reactions. *See* FAC ¶ 13; Mot. Dismiss at 2-3. True, Kraft disputes that the lactic acid resulting from these reactions is "artificial," but this is a factual determination that is inappropriate to conclusively determine on a motion to dismiss. The Court also disagrees with Kraft's assertion that Plaintiffs' characterization of the lactic acid as "artificial" is a legal conclusion, as Plaintiffs detail the process used to make manufactured lactic acid, the resulting compounds, and how those compounds are converted to lactic acid using synthetic reactions. *See* FAC ¶¶ 13-17. This is far from a bare allegation that an ingredient is "artificial.

Although the Court finds that Plaintiffs have plausibly alleged that the lactic acid contained in the Products is artificial for purposes of the motion to dismiss, the Court declines Plaintiffs' invitation to find that the lactic acid in the Products is artificial as a matter of law. Whether the lactic acid contained in Kraft's Products is

artificial is inherently a factual dispute that is inappropriate for determination at the motion to dismiss stage.

In sum, taking Plaintiffs' well-pleaded allegations as true, the Court finds that Plaintiffs have sufficiently alleged that the lactic acid in the Products is artificial.

*b. Whether Lactic Acid in Philadelphia Cheesecake Crumbles Acts as a Preservative*

Kraft further argues the Amended Complaint must be dismissed as Plaintiffs have not plausibly alleged that the lactic acid in Philadelphia Cheesecake Crumbles actually functions as a preservative. Recall that the Products' label reads "No Artificial *Preservatives*." Mot. Dismiss at 5. From Kraft's perspective, even assuming the lactic acid in the Products is artificial, Plaintiffs have failed to plausibly allege that it functions as a preservative and as such, the claims must be dismissed.

Plaintiffs allege that lactic acid is a "chemical preservative" because it "functions in pH reduction, flavor enhancement, and microbial inhibition" and therefore "tends to prevent or retard deterioration" of food. FAC ¶¶ 15-17. Kraft posits that "even if lactic acid *can* act as a preservative, Plaintiffs' allegations do not establish that the lactic acid *actually* functions as a preservative in the products." Mot. Dismiss at 9. In support, Kraft argues that lactic acid carries out a wide range of functions other than preserving food. *Id*. Kraft further points to the Products' label, which "complies in exacting detail with the FDA guidelines" that food with chemical preservatives added must bear a label stating such. *Id*. at 10. Here, the Products' label "includes lactic acid in the ingredient line but does not include a parenthetical description of its function." *Id*. Thus, "the only logical conclusion is that Kraft Heinz

does not include [a separate descriptor of the function] of lactic acid because it does not act as a preservative." *Id.* At bottom, Kraft argues Plaintiffs have not plausibly alleged that the lactic acid in the Products *actually* functions as a preservative. *Id.* at 11.

Plaintiffs begin by pointing out that "function of an ingredient in a product is not determinative of the effects of an ingredient on consumers after they consume it." Resp. at 9. Plaintiffs analogize to a hypothetical product labeled "No Poisons" but that contains a poison that is functioning as a stimulant in the product. *Id.* "Even if the [poison] truly functioned as a stimulant in the hypothetical product, it would still be a poison, because it is categorically a poison." *Id.* Although creative, the Court finds Plaintiffs' second argument more persuasive: that courts in this district have held that the function of an ingredient in a food product presents a question of fact that cannot be decided on a motion to dismiss. *Id.* at 11.

Here, Plaintiffs have plausibly alleged that lactic acid *can* function as a preservative. *See* FAC ¶¶ 16-17 (16. Lactic acid when added to food tends to prevent or retard deterioration thereof, but is not common salt, sugar, vinegar, a spice, an oil extracted from spices, a substance added to food by direct exposure thereof to wood smoke, or a chemical applied for its insecticidal or herbicidal properties); (17. Based on the forgoing allegations, lactic acid is a chemical that retards the deterioration of food products. Therefore, it is a chemical preservative. Moreover, lactic acid is specifically an antimicrobial agent in cheeses, such as in Kraft's Products which are cheesecake desserts.). That is enough at the motion to dismiss stage.

Courts in this district have allowed similar claims to proceed at the motion to dismiss stage. For example, in *Wilson v. Smartfoods, Inc.* the court considered strikingly similar arguments to those posed by Kraft here. 2025 WL 1311070, at *6 (N.D. Ill. May 5, 2025). In *Wilson*, defendant PepsiCo argued that plaintiffs failed to allege maltodextrin functioned as a preservative in the popcorn product. *Id.* at *5. While "maltodextrin *can* be a preservative," defendant explained, "[p]laintiffs must allege that PepsiCo used it in its White Cheddar popcorn for a preservative purpose." *Id.* Not so. The court found that plaintiffs' well-pleaded allegations were sufficient as plaintiffs had alleged that maltodextrin has preservative qualities and acts as a preservative. *Id.* at *6. "[R]egardless of PepsiCo's intent, using maltodextrin made the representation on the popcorn's packaging literally false," plaintiffs contended. *Id. see also Hayes v. Gen. Mills, Inc.*, 2021 WL 3207749, at *3 (N.D. Ill. July 29, 2021) ("... the question of whether malic acid functions as a flavor or a flavor enhancer in a particular food product is a factual dispute inappropriate for resolution on a motion to dismiss."); *Slowinski v. HP Hood LLC*, 2026 WL 885113, at *3 (N.D. Ill. Mar. 31, 2026) ("whether DKP actually functions as a preservative in these Products is a factual question not suited for resolution at the motion to dismiss stage").

The same is true here. Plaintiffs have plausibly alleged that lactic acid has preservative qualities and acts as a preservative. *See* FAC ¶¶ 16-17. And "[w]hile Plaintiffs could have been slightly more precise and explicitly alleged that [lactic acid] functions as a preservative in [the Products], viewed in a light most favorable to them, Plaintiffs have done enough to state a claim." *Wilson,* 2025 WL 1311070, at *6.

It very well may be that discovery shows lactic acid does not actually function as a preservative in the Products. *See Wilson*, 2025 WL 1311070, at *6; *see also Slowinski*, 2025 WL 524118. "What matters though is whether the relevant labels are likely to deceive reasonable consumers." *Id.* (citing *Bell*, 982 F.3d at 475). But that is an issue for another day. At this juncture, Plaintiffs have done enough to survive Kraft's motion to dismiss.

## III. Nationwide Class Allegations

Finally, Kraft asks this Court to strike Plaintiffs' class claims for common-law fraud and unjust enrichment on behalf of a putative nationwide class. *See* Mot. Dismiss at 12. In support, Kraft posits that since these claims are governed by varying common laws of all fifty states, they are unsuited to class-wide treatment. *Id.* Kraft notes that the Supreme Court has empowered district courts to strike class allegations at the pleading stage when the defects in the class allegations are "plain enough from the pleadings." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Additionally, Kraft contends that class actions are improper unless all litigants are "governed by the same legal rules" and that "warranty, fraud, or products-liability suits may not proceed as nationwide classes." Mot. Dismiss at 12-13 (citing *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002)).

Motions to strike are generally disfavored. *See, e.g.*, *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The Court has discretion to consider whether a class can be properly certified under Rule 23 "[a]t an early practicable time after a person sues," and "may deny class certification even before

the plaintiff files a motion requesting certification." Fed. R. Civ. P. 23(c)(1)(A); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (the court has "an independent obligation to decide whether an action brought on a class basis is to be so maintained"). "It need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination." *Kasalo*, 656 F.3d at 563. However, "[i]f the dispute concerning class certification is factual in nature and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature," and "[g]enerally, courts deny motions to strike class allegations before certification briefing." *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 4333709, at *1 (N.D. Ill. Sept. 27, 2024) (collecting cases).

"The burden lies with the defendant on a motion to strike to definitively establish that a class action cannot be maintained consistent with the class allegations." *Dowding v. Nationwide Mut. Ins. Co.*, 490 F. Supp. 3d 1291, 1298 (N.D. Ill. 2020); *see also Womick v. Kroger Co.*, 2022 WL 1266630, at *2 (S.D. Ill. Apr. 28, 2022) ("recently courts agree where the plaintiffs have not yet had the benefit of class discovery, the defendant bears the burden of proving that the proposed class is not certifiable.") (citation modified); *Kurt v. Platinum Supplemental Ins., Inc.*, 2021 WL 3109667, at *13 (N.D. Ill. July 22, 2021). "Courts in this district have largely declined to strike nationwide class allegations at the pleading stage where a party argued that a variation in state laws made a nationwide class impracticable." *Flaherty v. Clinique Lab'ys LLC*, 2021 WL 5299773, at *7 (N.D. Ill. Nov. 15, 2021) (collecting cases) ("It

may be that a nationwide class is impracticable here; however, the prudent approach is to wait for a more fully developed record before deciding that issue.").

Kraft has a "heavy burden" to show that "the pleadings make clear that the suit cannot satisfy Rule 23." *Piatek v. Norazza, Inc.,* 785 F. Supp. 3d 322, 339 (N.D. Ill. 2025) (citing *Hill v. Wells Fargo Bank, N.A.*, 946 F.Supp.2d 817, 830 (N.D. Ill. 2013)). In support of its argument to strike class allegations, Kraft cites *Daly v. Glanbia Performance Nutrition, Inc.*, 2023 WL 5647232, at *4 (N.D. Ill. Aug. 31, 2023). In *Daly*, the court struck class allegations at the motion to dismiss stage where defendant offered an "undisputed in-depth analysis of the many ways in which the laws of the states that comprise the proposed classes conflict." *Id*. Defendant in *Daly* further "detailed several material differences among various states' common-law fraud and unjust enrichment laws, to which [plaintiff] offer[ed] no rebuttal." *Id*. While Kraft makes general references to "material variations" amongst unjust enrichment and common law fraud claims, this does not rise to the level in *Daly* where defendant offered "undisputed in-depth analysis" of the differences amongst the proposed classes. *See* Mot. Dismiss at 12-14. Kraft has made no such showing here, and *Daly*'s own analysis makes clear why striking class allegations in this case is inappropriate: "Where it becomes clear that the substantive laws of different states will govern members of the same class, courts still often decline to strike class allegations at the pleading stage if the challenging party has not shown how differences among state laws would be material." *Id*. Kraft has "not explained why the high-level differences that it identified are material enough to defeat certification at the pleading stage."

*Id*. (quoting *Flaherty*, 2021 WL 5299773, at *7). At this stage, Kraft has not met its burden to "definitely establish that a class action cannot be maintained" consistent with Plaintiffs' allegations. While there may be hurdles, "it's too soon to know that [Plaintiffs] will never be able to meet [their] burden." *Piatek,* 785 F. Supp. 3d at 339.

Accordingly, Kraft's motion to strike is denied without prejudice as premature. Kraft of course may raise these arguments and any other appropriate arguments in opposition to any Rule 23 motion filed by Plaintiffs, or at another appropriate juncture.

**Conclusion**

For the foregoing reasons, the Court denies Kraft's Motion to Dismiss, R. 16, denies Kraft's Motion to Strike without prejudice, R.16, and grants Kraft's request for judicial notice, R. 18.

Date: 9/24/2026

United States District Judge
Franklin U. Valderrama